IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,608

STATE OF KANSAS,
*Appellee*,

v.

VINCENT R. JARMON,
*Appellant.*

SYLLABUS BY THE COURT

1.

When an instructional error was not raised in the district court and is asserted for the first time on appeal, failing to give a legally and factually appropriate instruction will result in reversal only if the failure was clearly erroneous.

2.

To establish a clearly erroneous instruction error, the defendant must firmly convince the court the jury would have reached a different result without the error.

3.

In a prosecution for burglary, the failure to instruct a jury on the elements of the intended felony underlying burglary constitutes error.

4.

The omission of an instruction defining the intended felony underlying a charge of burglary is subject to harmless error analysis.

1

5.

An untimely motion for new trial that asserts ineffective assistance of counsel may be treated as a collateral attack on a judgment under K.S.A. 60-1507.

6.

An untimely motion for new trial that is deemed a collateral attack on a judgment does not confer on the movant greater procedural rights than those provided to a timely movant filing under K.S.A. 60-1507.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 26, 2016. Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed June 15, 2018. The judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed in part and reversed in part. The judgment of the district court is affirmed.

*Heather Cessna,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: Vincent Jarmon appeals from his jury conviction for one count of burglary.

## FACTS AND PROCEDURAL BACKGROUND

At the time of the events that led to the conviction, Tommy Luallen and his mother, Mathilda Luallen, owned a commercial building in Wichita. Tommy was in

2

business with Larry Farmer. Tommy and Farmer bought storage units at auctions and resold the contents. They stored their inventory at the building in Wichita.

On May 6, 2013, Tommy Luallen and Farmer went to the building and discovered a hole in the back wall of the building. They attempted to remedy the breach by placing a board in front of it and piling marble sinks, tubs, a stove, a barrel, and other items in front of the board. On the morning of May 7, 2013, Farmer went to the building and opened the front door. He heard a noise in the back and saw a light shining where he would not normally expect to see any light. He backed out of the building and quietly closed the door and then called the police.

Officer Edward Johnson of the Wichita Police Department responded to report of a burglary in progress. He initially encountered Farmer, who told him someone was inside the building. Johnson and another officer entered through the front door, while a third officer went to the back of the building to seal it off. They announced their presence and made their way toward the back. There they encountered Jarmon and arrested him. Jarmon had chips on his clothing, similar in appearance to the wall insulation through which the holes in the back wall had been broken. He had a red bracelet belonging to Farmer on his left wrist. In Jarmon's pocket were found screws and washers that came from Farmer's business.

Farmer inspected the back room and saw that the tubs and sinks and barrel had been moved. A second hole was found above the earlier opening and higher than the stacked up items.

Bags not belonging to Farmer were found in the room; these bags were filled with Farmer's property. Open toolboxes were scattered around and many tools were missing from them. A jewelry display and other goods had been swept off shelves and were lying

3

on the floor. A string of Hot Wheels toy cars led to the hole and out into the alley. Over 120 Hot Wheels cars were missing, as were some jewelry, tools, stereo equipment, CDs, and DVDs. Jarmon did not have permission to be in the building.

## ANALYSIS

The State charged Jarmon with one count of felony burglary. A jury found him guilty as charged, and the court sentenced him to a standard term of 32 months of incarceration and 12 months of postrelease supervision.

Jarmon took a timely appeal to the Court of Appeals, which affirmed the conviction itself but reversed on a peripheral question of the effectiveness of trial counsel, particularly with respect to a conflict of interest when arguing Jarmon's pro se motion for change of counsel. The court remanded for a renewed hearing on the motion to replace trial counsel. *State v. Jarmon*, No. 111,608, 2016 WL 757570 (Kan. App. 2016) (unpublished opinion).

This court granted the State's petition for review with respect to the remand for a hearing on ineffective assistance of counsel and granted Jarmon's cross-petition for review with respect to the first issue he raised to the Court of Appeals—the omission of the theft instruction.

*The Omission of an Instruction on the Elements of Theft*

The jury was instructed on the elements of burglary. One of the elements was that Jarmon entered the building with the intent to commit a theft, but the instructions neglected to define theft. He asserts that the omission of a definition of theft constituted reversible error.

4

When a jury instruction is alleged to be erroneous,

"(1) [f]irst, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

Jarmon did not object to the burglary instruction. When, as here, an instructional error is asserted for the first time on appeal, failing to give a legally and factually appropriate instruction will result in reversal only if the failure was clearly erroneous. *State v. Solis*, 305 Kan. 55, 65, 378 P.3d 532 (2016). "To establish a clearly erroneous instruction error, the defendant must firmly convince the court the jury would have reached a different result without the error." 305 Kan. at 65. This standard applies with equal force when the defendant fails to object to an instruction that omits an element of a crime. The error is harmless if the appellate court has a firm belief beyond a reasonable doubt that the error had little, if any, likelihood of changing the result of the trial. *State v. Watson*, 256 Kan. 396, 404, 885 P.2d 1226 (1994).

The standard of review in Kansas is consistent with the standard applied by the United States Supreme Court when reviewing the omission of an element of a crime in jury instructions. See *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). In *Neder*, unlike here, the defendant preserved the issue by objecting to the missing element instruction. Relying on *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the *Neder* Court applied the standard test for

5

harmlessness: "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" 527 U.S. at 15. The court noted that the standard is essentially the same as the analysis used in other cases that deal with errors infringing upon the jury's fact-finding role: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" 527 U.S. at 18.

Here, the standard is relaxed because Jarmon did not object to the instructions. As with other instructional errors reviewed for clear error, the error may be deemed harmless unless Jarmon can convince this court that the jury would have reached a different verdict if it had been informed of the elements of theft.

Jury Instruction 7 read:

"In Count 1, the defendant, Vincent R. Jarmon, is charged with Burglary. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

    1.   That the defendant entered a building that is not a dwelling;

    2.   That the defendant did so without authority;

    3.   That the defendant did so with the intent to commit a theft therein;

    4.   That this act occurred on or about the 7th day of May, 2013, in Sedgwick County, Kansas."

This instruction generally tracked the PIK Crim. 4th 58.120 burglary instruction but omitted the PIK language "[t]he elements of [theft] are (set forth in Instruction

6

No. ___) (as follows: _____)." The instructions as given provided the jury with no definition of the crime of theft.

PIK Crim. 4th 58.010, defining theft, would have added language similar to this instruction:

> "To establish that the defendant intended to commit a theft, each of the following claims must be proved:
>
>> "Larry Farmer was the owner of the property.
>
>> "The defendant exerted unauthorized control over the property.
>
>> "The defendant intended to deprive Larry Farmer permanently of the use or benefit of the property.
>
>> "This act occurred on or about the 7th day of May, 2013, in Sedgwick County, Kansas."

See K.S.A. 2012 Supp. 21-5801 (defining theft).

In a burglary prosecution, failure to provide the elements of the underlying intended crime constitutes error. See, e.g., *State v. Richmond*, 258 Kan. 449, 458, 904 P.2d 974 (1995); *Watson*, 256 Kan. 396, Syl. ¶ 6; *State v. Rush*, 255 Kan. 672, 679, 877 P.2d 386 (1994); *State v. Linn*, 251 Kan. 797, 802, 840 P.2d 1133 (1992). Because Jarmon did not object to the instructions as given or request an instruction on the elements of theft, we apply the clearly erroneous standard set out above. Jarmon must firmly convince this court that the jury would have reached a different result if it had been instructed on the elements of theft.

7

An examination of the record leads us to conclude that the State's evidence was overwhelming and was never directly contested. It was clear that Jarmon did not have permission to be in the building and he had exerted significant effort in creating a hole that would give him access to the storeroom. He had warehouse property in his pockets; he was wearing a bracelet found in the warehouse; a trail of warehouse property could be followed from the warehouse through the hole and out into the alley; and warehouse property had been placed in bags that had been brought into the warehouse by someone other than the owners. Property that had been present in the building shortly before Jarmon was found there was missing when the building was searched after his arrest. This was compelling and uncontested evidence that he intended to permanently deprive the owners of their property.

No evidence was introduced of Jarmon's purpose or presence in the building other than the abundant circumstantial evidence of theft. Jarmon did not testify on his own behalf. On cross-examination, Johnson testified that the weather was "cool" at the time of the arrest. During closing argument, Jarmon's counsel contended that he was homeless and might have been looking for shelter and not looking to appropriate property. Counsel pointed out that Jarmon was wearing a jacket, which might be seen as evidence that Jarmon entered the building to avoid the "cool" weather.

Of course, if Jarmon had *not* been wearing a jacket, counsel could have argued that this was evidence likewise tending to show that he might have entered the building in order to escape from the weather. Wearing a jacket was not relevant to his motivation for breaking into the warehouse, because Jarmon could have been warmly dressed, not warmly dressed, or even naked, and the same argument could have been advanced based on the fact that he was wearing (or not wearing) clothing. The relevant and substantial evidence with respect to his clothing was the presence of warehouse property in Jarmon's pockets.

8

Even if a jury might have been persuaded that he initially entered the building for shelter from the elements, the evidence was compelling that he left the building with property not belonging to him and then returned to the building in order to obtain more of that property. Some property was missing entirely; some property was found in the alley behind the building; and some property was found on Jarmon's person. This evidence undermined any contention that he was in the building only for warmth and did not intend to permanently deprive the owners of their property.

The present case contrasts with *Rush*, 255 Kan. 672, where this court reversed a burglary conviction for failure to instruct on the elements of theft. In *Rush*, a homeless man forced entry into a store where he was found by police. Nothing was missing from the building, and the defendant had nothing on his person except his personal belongings. The defendant stated that he intended only to sleep in the building, not to take anything. In the present case, however, no evidence was put forward that Jarmon was homeless; property was missing from the building, Jarmon had store property in his pockets and on his wrist, and he had placed store property in bags that he brought with him. The evidence of theft was much greater than in *Rush*.

We are not firmly convinced that the jury would have reached a different verdict if the district court had given a theft instruction. A rational jury would have concluded that at least one of the reasons why Jarmon went into the building was to steal property. The instructional error was therefore harmless.

*The Motion to Replace Trial Counsel Prior to Sentencing*

Several weeks after the trial ended, Jarmon filed a pro se motion requesting a new trial based on the alleged ineffective assistance of his trial counsel. Immediately prior to

9

sentencing, the court conducted an inquiry on the motion and heard the arguments of his trial counsel, the attorney for the State, and Jarmon himself. The court then denied the motion and heard arguments on sentencing. Jarmon argued on appeal that the district court abused its discretion when it denied his motion, and the Court of Appeals agreed. The State challenges this holding on review.

Jarmon maintains that the standard of review is a mixed question of law and fact, with the ultimate conclusion subject to de novo review. The State, on the other hand, asserts that the issue is reviewed for abuse of judicial discretion. The State is correct. See *State v. Pfannenstiel*, 302 Kan. 747, 760-61, 357 P.3d 877 (2015) (duty to conduct inquiry on substitution of counsel can lead to three types of errors, each of which is reviewed on appeal for an abuse of discretion); *State v. Richardson*, 290 Kan. 176, 185, 224 P.3d 553 (2010) (discretion not abused in refusing to appoint new counsel for defendant).

An abuse of discretion occurs when judicial action is (1) arbitrary, fanciful, or unreasonable, i.e., no reasonable person would take the view adopted by the trial court; (2) based on an error of law, i.e., the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* ___ U.S. ___, 132 S. Ct. 1594 (2012).

Because Jarmon's motion for new trial was filed out of time, the Court of Appeals treated it as a motion under K.S.A. 60-1507. It remanded for a hearing, complete with new appointed counsel. In so doing, the Court of Appeals provided Jarmon with procedural rights superior to those granted many petitioners who file timely K.S.A.

60-1507 pleadings. When 60-1507 pleadings are timely filed, the petitioners are not guaranteed a hearing and are not automatically provided with court-appointed attorneys.

Jarmon charged in his motion that his attorney, Latina Wharton, provided ineffective assistance and "deliberately and with intention sabotage[d] the defendant's jury trial." He set out several grounds for his allegation: Wharton was aware that he was homeless and was in the building because he was homeless; Wharton refused to object to the introduction of photographs of the building; Wharton failed to object to the publication of a photograph showing him in handcuffs; and Wharton "failed to give any opening statements to a defense" and, after being summoned to the judge's bench, she never returned to complete opening statements. He then asked the court to dismiss Wharton and grant him a new jury trial.

The district court conducted an inquiry in which it gave Jarmon, Wharton, and the prosecutor ample opportunity to speak. Jarmon repeated the contentions contained in his motion. Wharton initially stated that she was "willing to work with Mr. Jarmon." She explained that she, not the State, introduced the photograph of Jarmon, which she did for the purpose of suggesting that the weather was cold and he had sought shelter in the building. The prosecution also spoke to some of Jarmon's concerns and portrayed Wharton as having performed admirably.

The district court made two findings: that there was no basis for granting a new trial and that there was an insufficient basis for replacing Wharton as counsel. In particular, the court addressed Wharton's decision not to introduce direct evidence of Jarmon's homeless condition and motives for being in the building:

> "Now, there are certain strategies, though, if she calls you to the stand to testify oh, I was homeless, didn't have any place to stay, that's why I went in there, you're

11

opened up to cross-examination, which probably would have been—had horrible results for you, with [the prosecutor] asking you questions about this. That would have been a total meltdown in your case. She did an excellent job of using other evidence to point out to the jury and she made the argument in closing argument, I remember thinking about that, and thinking that's a good point, and yeah, she's doing a good job there bringing that out, that you know, hey, trying to argue that you were in there for the purposes of shelter."

The Court of Appeals determined that there was necessarily a conflict of interest when Wharton responded to her client's motion. *Jarmon*, 2016 WL 757570, at *5. The Court of Appeals initially noted, apparently agreeing with the State, that Jarmon's motion for new trial was filed out of time and was therefore jurisdictionally deficient. The court then elected to treat the motion as a collateral challenge to the conviction under K.S.A. 60-1507. 2016 WL 757570, at *5.

In *State v. Reed*, 302 Kan. 227, 236, 352 P.3d 530 (2015), the defendant filed a motion alleging ineffective assistance of trial counsel *before* sentencing but three months *after* the guilty verdict. This court held that a district court has jurisdiction under K.S.A. 22-4506 (applying to "any person who is in custody under a sentence of imprisonment") to treat the motion as a collateral attack on the sentence. The court cited *State v. Kirby*, 272 Kan. 1170, 1192-93, 39 P.3d 1 (2002), which held that a posttrial but presentencing motion for new trial that alleged ineffective assistance of counsel could be treated as a postconviction motion under K.S.A. 22-4506.

The Court of Appeals remanded for a hearing on Jarmon's "collateral challenge to his conviction on the basis of ineffective assistance of counsel." 2016 WL 757570, at *7. At this hearing he was to receive new appointed counsel.

12

Because Jarmon's motion for new trial was untimely, the only mechanism for considering the motion was to treat it as a collateral attack on his conviction along the lines of *Reed*. But such a collateral attack does not guarantee the movant a full hearing and neutral appointed counsel. K.S.A. 60-1507(b) allows a district court to summarily dispose of a motion based on the files and records of the case and without the presence of the prisoner. K.S.A. 22-4506(b) requires appointment of counsel only when the court finds that the motion presents substantial questions of law or triable issues of fact. By granting Jarmon a full hearing with new counsel, the Court of Appeals provided him with more procedural rights than he may have received if he had filed his motion on time or had filed a true 60-1507 motion.

In *State v. Sharkey*, 299 Kan. 87, 95, 322 P.3d 325 (2014), the court noted that an untimely motion for new trial is subject to a summary denial without appointing counsel if the judge determines that the motion, files, and records of the case conclusively show that the movant is entitled to no relief. See K.S.A. 60-1507(b). Such a disposition would have provided Jarmon *less* protection than he received in the present case under a challenge based on asserted conflicts of interest. Normally, a court would conduct a preliminary examination to determine whether the requested relief was a realistic possibility. He would not be automatically entitled to a hearing, much less to appear and testify at the hearing. The Court of Appeals skipped the statutory step allowing the district court to conduct a preliminary investigation of the merits of the claim. Under the Court of Appeals reasoning, Jarmon was entitled to an inquiry sufficient to develop on the record the interests of the parties *because* he filed his motion out of time.

The Court of Appeals erroneously created a right to the appointment of new, neutral counsel. This court has held that a claim of conflict of interest between a defendant and counsel does not require "automatic substitution of counsel." *Pfannenstiel*, 302 Kan. at 764. Kansas caselaw has consistently held that a district court need not

13

appoint new counsel until it finds, after an initial inquiry into potential conflict of interest, that a defendant has established "justifiable dissatisfaction with his or her current attorney." 302 Kan. at 765; see also *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 (2014); *State v. Wells*, 297 Kan. 741, 754, 305 P.3d 568 (2013).

In order to demonstrate justifiable dissatisfaction, a defendant seeking new counsel must show a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. *Pfannenstiel*, 302 Kan. at 759-60. Jarmon's motion articulated a statement of attorney dissatisfaction, which triggered the district court's duty to inquire into a potential conflict of interest. 302 Kan. at 760.

Because Jarmon's motion was untimely, he was not entitled to assistance of conflict-free counsel to argue for a new trial. *Pfannenstiel*, 302 Kan. at 763. He was also not entitled to conflict-free counsel to argue for the existence of a conflict with his current appointed counsel. 302 Kan. at 765.

The present case is substantially similar to the circumstances of *Pfannenstiel*, where the defendant filed a pro se motion for substitute counsel based on a conflict of interest and the district court questioned the defendant and his counsel at a hearing before denying the request. 302 Kan. at 755-57.

*Pfannenstiel* held that, while a district court's questioning of defense counsel during its inquiry into the potential conflict does not automatically create a conflict, counsel must tread a fine line to ensure her or his statements do not create a conflict. 302 Kan. at 765-66. Inquiry by the district court of defense counsel is necessary, but statements by counsel that go beyond factual recitations and argue against the client's position create an actual conflict of interest. 302 Kan. at 766. Counsel may make

14

statements regarding decisions of trial strategy and are "a generally appropriate area of inquiry." 302 Kan. at 767. Likewise, comments by counsel that the defendant may have misunderstood what counsel told him or her do not cross the line of conflict of interest, despite being adverse to defendant's statements. 302 Kan. at 767.

Here, the statements by Jarmon's defense counsel amounted to an explanation of trial strategy; a clarification of the factual basis for some of the events at trial; and a clarification that, contrary to Jarmon's allegations, she had advanced Jarmon's theory of defense during closing arguments. Although some of these statements contradicted Jarmon's allegations, they constituted factual recitations rather than advocacy against Jarmon's motion.

The record supports the district court's conclusion that there was no conflict between Jarmon and Wharton sufficient to justify either a new trial or the appointment of new counsel. Some of the allegations in Jarmon's motion are clearly false. Wharton definitely presented an opening argument that, while brief, was complete. Some of the allegations were vague and failed to point out a true inadequacy of representation. The introduction of the photograph was a deliberate and legitimate, albeit unsuccessful, trial strategy. The claim that Wharton failed to advocate based on his homelessness was not quite true and was also a matter of trial strategy, which prevented her from calling him as a witness subject to cross-examination.

This was a difficult case to defend. Jarmon was caught in a warehouse, having obviously broken through a wall to obtain entry. He was caught with warehouse property in his pockets, on his wrist, in bags that he evidently brought with him, and in the act of taking property out through the hole in the wall. He was marginally articulate and had an extensive criminal history involving theft and trespass, which made it dangerous to place him on the stand.

15

It is inappropriate to send this case back for a hearing on the motion for new trial or the motion to replace counsel. The Court of Appeals mandated appointment of new counsel for a collateral challenge that had no support in the record and files. A challenge such as the one that Jarmon raised is normally subject to summary denial without appointment of counsel. The district court would have little before it at such a hearing that it did not have at its inquiry on the conflict of interest: testimony by Jarmon, Wharton, and the prosecution, as well as its own observations about the conduct of the defense. It is extraordinarily unlikely that the court would reach a different conclusion than it did at the time of the hearing on the motion. A remand in cases such as this one would reward defendants who file untimely motions for new trial by providing them with full-fledged evidentiary hearings supported by appointed counsel. There is no support for such an outcome either in caselaw or statute.

CONCLUSION

We therefore reverse the Court of Appeals ruling on the motion for new trial. The conviction of burglary and the denial of the motion for new trial by the district court are affirmed.