NOT DESIGNATED FOR PUBLICATION

No. 118,787

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COY RAY CARTMELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed March 15, 2019. Affirmed.

*Clayton J. Perkins*, of Capital Appellate Defender Office, for appellant.

*Joseph M. Penney*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., LEBEN, J., and KEVIN BERENS, District Judge, assigned.

LEBEN, J.: Coy Ray Cartmell appeals his conviction of distribution of a controlled substance—about a half-ounce of marijuana sold for $40. That's a felony offense under Kansas law, and the court sentenced Cartmell to serve 28 months in prison.

Cartmell first challenges the jury instructions, which mistakenly failed to tell the jury that Cartmell had to commit the crime intentionally. But Cartmell's attorney didn't object to the jury instructions at trial, so we review only for clear error—meaning that he must convince us that the jury's verdict would have been different with a better instruction. We don't find that to be the case: Cartmell's defense was that he didn't

transfer any marijuana to the undercover officer he saw that night, not that he accidentally or mistakenly did so.

Cartmell's second objection is to some testimony of that undercover officer. She had gone to buy marijuana from a specific person that night, and she told the jury she "was told that [she] would be buying from Coy Cartmell." That suggested Cartmell was a guy that somebody knew to be selling marijuana—and likely was the person the officer bought marijuana from that night. Cartmell objects that the testimony was inadmissible hearsay, the statement of a person who didn't testify at trial offered to prove his guilt.

But even if we assume the trial court shouldn't have admitted this testimony, we don't reverse the jury's verdict when the erroneous admission of evidence didn't affect the trial's outcome. We don't find that this testimony affected the outcome here. Another officer testified—without objection—that he too had been told before the exchange that Cartmell would be the seller. And the trial simply came down to which of two primary witnesses the jury believed—the undercover officer, who said she bought the marijuana from Cartmell, or Cartmell, who denied it.

We find no reversible error in this trial and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The events unfolded one evening in January 2016. Depending on whose testimony you believe, Cartmell encountered undercover El Dorado police officer Maggie Schreiber either around 9:30 p.m. (her testimony) or around 5:30 p.m. (his testimony).

Schreiber said that she had arranged an undercover drug buy through an informant, a woman named Lisa Williams, who accompanied Schreiber that evening. Schreiber, in disguise, drove with Williams to a residential complex (a collection of small

2

homes) known as the Country Cottages. She said that she drove in at about 9:30 p.m. and saw Cartmell standing nearby unit No. 7.

Soon after Schreiber parked her car, she said Cartmell came to the driver's side window. She said he gave her two small plastic bags of marijuana (each containing a single bud) and she gave him $40. The total weight of the marijuana in the bags, as confirmed by the Kansas Bureau of Investigation, was just under half an ounce.

Schreiber said that because she had done undercover drug buys before, she made note of Cartmell's facial features and appearance so that she could accurately identify him. She said that he had been only about two feet away and that she had adequate lighting. Either later that night or the next day, she looked at his driver's license photo and said that was the man she'd bought the marijuana from.

Another El Dorado police officer, Detective Scott Roberts, waited nearby that night, tracking Schreiber's movements through a GPS tracking unit. He testified that the plan had been that Schreiber would be buying marijuana from Cartmell. He said that Schreiber went to the Country Cottages at about 9:30 p.m., was there for about two minutes, and then met Roberts back at the police station—with the two bags containing marijuana.

Cartmell testified that Schreiber had approached him on foot that night at about 5:30 p.m. He said he remembered the date and time because he had been getting ready to go to a birthday party for an 11-year-old boy. He said Schreiber came up as he was loading things into his car; he said she told him a friend had said he could get her some marijuana. Cartmell said he told her he didn't have any, Schreiber left, and Cartmell went to the birthday party about an hour later.

3

The jury found Cartmell guilty. Based on the level of the offense (a severity-level 4 drug offense), the presumptive sentence was imprisonment. But because the offense level, even when matched with someone like Cartmell who hasn't committed any person felony offenses, is in a border box on the sentencing guidelines chart, the court could grant probation. That was an option if the court found that there were treatment programs available in the community that would be more effective than imprisonment in reducing the chance of further offenses by Cartmell. See K.S.A. 2018 Supp. 21-6805(d); K.S.A. 2018 Supp. 21-6804(q).

When defense counsel argued that Cartmell's real problem was that he was selling small quantities of drugs to pay for the drugs he was using, the district court set over the sentencing to give Cartmell a chance to get a drug evaluation so that he might make the case for probation. But Cartmell never got one—he said he couldn't afford it, but he also had at least one positive drug test for marijuana use while awaiting sentencing. The court ultimately gave Cartmell the presumptive sentence, 28 months in prison.

Cartmell then appealed to our court. He has appealed the underlying conviction, not the sentence.

ANALYSIS

I. *Cartmell Has Not Shown Clear Error in the Jury Instructions*.

Cartmell claims that the jury instructions should have told the jury that he had to commit the offense intentionally. With limited exceptions, to be guilty of a crime, you must have had some guilty mental state. So you must not only do some specific act (or fail to do one), but you also must have a particular state of mind. Under Kansas law, some acts must be done intentionally—meaning it's the person's conscious objective to engage in the conduct or cause the result—to be a crime. Others might be criminal when

4

done knowingly (when the person is aware of that person's conduct and it's reasonably certain to cause the result) or even recklessly (by consciously disregarding a risk). See K.S.A. 2018 Supp. 21-5202.

At Cartmell's trial, the district court gave somewhat odd instructions to the jury. The court never told the jury that Cartmell had to have committed this offense in some particular mental state—whether intentionally, knowingly, or recklessly. But the court defined for the jury what it meant for someone to act intentionally—even though nothing in the rest of the instructions told the jury why that might be important.

The court gave the jury the elements of the offense charged—unlawful distribution of a controlled substance—in Instruction No. 6:

"The defendant is charged with unlawfully distributing a controlled substance. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant distributed marijuana.
"2. The quantity of the marijuana was less than 25 grams.
"3. This act occurred on or about the 7th day of January, 2016, in Butler County, Kansas.
"'Distribute' means the actual, constructive, or attempted transfer of an item from one person to another, whether or not there is an agency relationship between them.
"'Distribute' includes sales, offer for sale, or any act that causes an item to be transferred from one person to another."

Nothing in that instruction told the jury that Cartmell's distribution of marijuana had to be done intentionally—actual, constructive, or attempted transfer of marijuana from one person to another was all that was required.

5

In an earlier instruction, Instruction No. 4, the court had told the jury that the State had to prove that Cartmell had committed the crime of unlawfully distributing marijuana. And it was here that the court defined what "intentionally" meant:

> "The State must prove that the defendant committed the crime of unlawfully distributing marijuana. A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State or cause the result complained about by the State."

But neither here nor in Instruction No. 6 did the court tell the jury that Cartmell had to have acted intentionally when he transferred or attempted to transfer marijuana to someone else.

The State suggests in its appellate brief that perhaps the Kansas crime of unlawfully distributing a controlled substance doesn't require any guilty mental state—that it's a strict-liability offense. The State argues that there's no "binding caselaw authority" negating that possibility. But our state's criminal code provides that "[e]xcept as otherwise provided, a culpable mental state is an essential element of every crime defined by this code." K.S.A. 2018 Supp. 21-5202(a). And even when the statutory definition of a crime "does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." K.S.A. 2018 Supp. 21-5202(d).

So while the statute making the distribution of controlled substances unlawful, K.S.A. 2018 Supp. 21-5705, doesn't mention a guilty mental state, that absence doesn't "plainly dispense" with the mental-state requirement. When the Legislature has wanted to do that, it has plainly said so. For the unlawful possession of a firearm on some government property, for example, the Legislature made it "unlawful to possess, *with no requirement of a culpable mental state*, a firearm" in locations like the Governor's

6

residence. (Emphasis added.) K.S.A. 2018 Supp. 21-6309(a). And when the Legislature wanted to ban smoking in certain places, like taxicabs and places of employment, it made it "unlawful, *with no requirement of a culpable mental state*, to smoke" there. (Emphasis added.) K.S.A. 2018 Supp. 21-6110(a). The Legislature did not "plainly dispense" with a culpable mental state when making the distribution of controlled substances unlawful, so it isn't a strict-liability offense.

Perhaps recognizing the weakness of its argument that this is a strict-liability offense, the State concedes in its appellate brief that "it appears that the first sentence in [Instruction No. 4] should have ended with the word 'intentionally.'" Had it done so, the first sentence would have read, "The State must prove that the defendant committed the crime of unlawfully distributing marijuana *intentionally*." (Emphasis added.)

When the Legislature defines a crime, doesn't mention the required mental state, but doesn't plainly dispense with any mental-element requirement, the Legislature has provided that intent, knowledge, *or* recklessness will suffice. K.S.A. 2018 Supp. 21-5202(e). In Cartmell's case, the State wasn't alleging reckless conduct—and on appeal the State has suggested that instructing the jury about intentional conduct would have been appropriate. Based on the allegations against Cartmell, instructing the jury that the offense had to be done intentionally would have been legally and factually appropriate. Since the district court didn't do so, that was an instruction error. See *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016).

But concluding that the district court's jury instructions contained an error is only part of the analysis we must make here. Cartmell's claim of jury-instruction error has an extra hurdle to clear—he didn't ask the district court to give the jury any guidance on the mental-state requirement. Because of that, he must show what's called clear error. Under that standard, we set aside the jury's verdict only if Cartmell firmly convinces us that the

7

jury would have reached a different result had the instruction error not occurred. *State v. Jarmon*, 308 Kan. 241, 244, 419 P.3d 591 (2018).

We don't find that to be the case. Cartmell's defense at trial was straightforward: He said that he told Schreiber that he didn't have any marijuana and didn't give her any. He didn't argue that he had accidentally dropped marijuana into the officer's car or hands when they met. So there's no reason to think the jury would have looked at things differently had the court said more directly that the State had to prove Cartmell intentionally transferred the marijuana to Schreiber. She either gave him $40 for the two marijuana buds (her testimony) or didn't (his testimony). The jury believed her; we do not find clear error.

II. *Any Error in the Admission of Evidence that Officers Expected to Encounter Cartmell Was Harmless.*

Cartmell's second claim of trial-court error involves the admission of testimony from Schreiber that she "was told that [she] would be buying from Coy Cartmell." That information had come from Lisa Williams, a police informant who wasn't available to testify at trial.

Recognizing that Williams wasn't going to be testifying, Cartmell's attorney filed a pretrial motion to exclude the audio recording made of the drug buy because many statements Williams made were on that recording. The State decided not to introduce the recording, concluding that cutting out all of Williams' statements left an incoherent tape. Based on that decision, the court said that witnesses should be told not to make references to the recording or generally to statements made by Williams. But the court left open the possibility that some statements might be admissible to provide background, though they could not be admitted to prove the truth of something Williams had said. That would be

8

inadmissible hearsay—the statement of a person not present when offered to prove the statement's truth.

The challenged testimony came during the direct examination of Schreiber. The prosecutor asked a yes-or-no question: "[D]id you know who . . . you were gonna be buying from or who the suspect was?" As often happens in a trial, though, rather than saying, "Yes," Schreiber answered the logical follow-up question: "I was told that I would be buying from Coy Cartmell . . . ." Defense counsel immediately objected that this was inadmissible hearsay.

The prosecutor said he had told his witnesses not to talk about things Williams had said, but argued that "at this point, we . . . don't know who told her that." The court said that nothing substantive from Williams should be presented through other witnesses and recognized that identification of the person Schreiber had bought marijuana from was "crucial to make a case." But the court ultimately held that although this had almost gone "over the line," it could "be rectified through cross-examination" and overruled the objection.

What the district court did not do, though, was analyze whether Schreiber's testimony on this point was hearsay, which was the defendant's objection. Schreiber was obviously relying on information she had been given by someone else. And as the court noted, *who* the person was that she bought marijuana from was something the State had to prove at trial. So Schreiber was presenting Williams' statement that Cartmell was to be the buyer to convince the jury that Cartmell was, in fact, the buyer. That's hearsay—the past statement of someone not present to prove the truth of the statement. See K.S.A. 2018 Supp. 60-460(a).

The State suggests that the testimony was still admissible to show why Schreiber was at the Country Cottages that night. But the State could have conveyed that

9

background information through testimony merely saying that she expected to buy marijuana from *someone* at the Country Cottages rather than that she expected to buy it specifically from Cartmell.

Even if we assume the evidence wasn't admissible, though, once again there's a harmless-error test to consider. This time, the State, having benefitted from the improper admission of this evidence, would have the burden to show harmless error. The error is harmless if the State shows that there's no reasonable probability that it affected the trial's outcome. See *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012). We find no reasonable probability here that the admission of this single answer from Schreiber affected the jury's verdict.

First, the same evidence came in—without objection—through another witness, Detective Roberts. He was the State's first witness, and he told the jury that officers had known in advance who Schreiber would be meeting that night:

> "Q: And did Lieutenant Schreiber, at that point, . . . tell you . . . who she met with at the
>    Country Cottages?
> "A: Yes. And we knew prior who we—who she was meeting with as well.
> "Q: Okay. And . . . who did Lieutenant Schreiber tell you that she met with at the
>    Country Cottages?
> "A: She told us that she was meeting with a Coy Cartmell."

Roberts had also told the jury that Schreiber's informant had accompanied her that night to the drug buy. So Roberts had already told the jury that the officers expected Cartmell to be the buyer, and the obvious source for that information was Williams, the informant. Cartmell can't complain on appeal about the admission of evidence he didn't object to at trial. See *State v. Lowery*, 308 Kan. 1183, 1195-96, 427 P.3d 865 (2018). That makes Schreiber's brief statement simply confirmation of evidence already presented and thus unlikely to have had any major effect on the trial.

10

Second, as we've already explained, the trial really wasn't in any meaningful way a dispute about Cartmell's identity. Both Cartmell and Schreiber said the two of them interacted that evening. In Cartmell's testimony, the encounter was around 5:30 p.m. and no marijuana was sold. In Schreiber's testimony, the encounter was around 9:30 p.m. and Cartmell sold marijuana to her.

The jury believed Schreiber, whose testimony was supported by that of Roberts and by the physical evidence (two marijuana buds). We find no reasonable probability that the verdict would have been different had Schreiber not testified that she had been told in advance that Cartmell would be the buyer.

We find no reversible error and affirm the district court's judgment.

11