NOT DESIGNATED FOR PUBLICATION

No. 123,026

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THADDEUS JONES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed December 10, 2021. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., POWELL and CLINE, JJ.

PER CURIAM: Thaddeus Jones seeks a new trial after being convicted for battery against a law enforcement officer and criminal threat. Before trial, Jones' counsel abandoned Jones' defense on the grounds of mental disease or defect after receiving an unfavorable expert evaluation. Jones now alleges his counsel's failure to seek a second expert evaluation constituted ineffective assistance of counsel. He claims the district erred in not appointing substitute counsel to represent Jones on his untimely motion for a new trial. Jones also challenges the constitutionality of K.S.A. 2016 Supp. 21-5209 and the Kansas Sentencing Guidelines Act.

1

We find no error in the district court's summary denial of Jones' motion, nor are we persuaded by Jones' constitutional arguments. For these reasons, we affirm Jones' convictions.

FACTS

Jones was arrested and booked into the Sedgwick County Jail, where he was evaluated by a mental health nurse practitioner. She diagnosed him with bipolar disorder and prescribed medication. He was placed in isolation in the clinic "pod" under suicide watch. Due to complications, Jones' prescription was modified several times during his stay at the jail.

While incarcerated, Jones removed his "suicide smock" and used it to clog his toilet. He then flooded his cell by continually flushing the toilet. After a correctional officer repeatedly told Jones to stop, Jones responded that he was not supposed to be in jail because there were no charges against him. He told the officer he wanted to fight her, and, in fact, he wanted her to open the door to his cell so he could do just that. At that point several officers arrived at Jones' cell to help remove him.

As the officers tried to remove Jones from his cell, he became agitated, saying he did not want the officers touching him. Jones focused on one officer in particular, Sergeant Lisa Abbott, and repeatedly said he did not want Abbott to touch him. Jones told Abbott he would kick her in the neck and then kicked her in the leg. The officers were eventually able to restrain Jones, whereupon he was taken to the medical clinic for evaluation. Jones was charged with battery against a law enforcement officer and criminal threat.

Several months before trial, Jones' counsel filed a notice of intent to rely on a defense of mental disease or defect with the district court. He never provided the State

2

with an expert report to support this defense. Instead, the week before trial, he supplied the State with Jones' jail medical records and said he intended to introduce these records at trial through the jail nurse. The State then moved in limine to prohibit Jones from presenting any evidence that he was acting under a mental disease or defect at the time of the crime or from presenting any evidence about Jones' general state of mind at the time of the crime. The State claimed the defense was time barred and defense counsel had not produced an expert report as required by K.S.A. 22-3219.

At the hearing on the State's motion, the State argued Jones was trying to make an end-run around the statutory requirements for presenting a mental disease or defect defense without securing an expert report. Defense counsel responded by saying he did not plan to present a mental disease or defect defense at trial. He acknowledged that he had not secured an expert but argued Jones should still be allowed to present evidence at trial about his mental state when the offenses occurred:

> "We're not asking for any special instruction with regard to mental disease or defect. We're not asking for that defense. We're simply saying that he has a right to talk about and to explain to the jury why he was the way he was, why he was dressed the way he was; and the mere fact that he was in the same area, in the same pod, with other people with mental health issues."

The district court noted that Jones had not submitted an expert report in compliance with the statutory requirements to present a mental disease or defect defense at trial. Ultimately, however, the court determined it could not make a broad ruling on the admissibility of evidence without knowing specifically what would be introduced at trial. The court said it would keep the matter under advisement and address it as trial progressed.

When Jones' jury trial began, the district court clarified that Jones would not be allowed to introduce evidence about any mental disease or defect, since he had not

provided the court or the State with an expert report. Defense counsel responded, "Well, Your Honor, I guess I'm somewhat confused. Is it the Court's ruling that my client cannot testify as to what he believes was occurring during the incident?" A long discussion between defense counsel and the district court as to what constituted evidence of mental disease or defect followed. Ultimately, the court reiterated that it would not allow Jones to present a mental disease or defect defense and that it would wait "to see how the evidence plays out" before ruling on the admissibility of any specific evidence.

At the trial, defense counsel called two witnesses in Jones' defense: Jones and the nurse practitioner who treated him at the Sedgwick County Jail. Jones testified he remembered only part of the incident and described what he believed happened. He mentioned he had been isolated in a pod for people with "mental issues" and prescribed medication. He said he recognized Officer Abbott and claimed he had a decent relationship with her before the incident. While he did not dispute the accuracy of a videotape on which the interaction had been recorded, he said he was shocked by his behavior.

The nurse testified about prescribing medication to Jones at the jail, including explaining the purpose of medicating him and his diagnosis.

Defense counsel's closing argument hinted at Jones' mental health problems. He focused on the fact that Jones was housed in the medical wing on suicide watch and was acting irrationally and erratically when the offenses occurred. He argued the prison officials acted irresponsibly and instigated the incident by removing Jones from his cell when he was already distressed and by using Sergeant Abbott when they knew this was likely to agitate Jones, given his state. The jury convicted Jones of both charges.

Defense counsel timely moved for a new trial, alleging the State's evidence could not support the convictions. More than three months later, Jones sent a letter to the court

titled, "In re: Motion for New Trial." Jones began the letter by noting that his counsel had moved for a new trial and stated: "I ask that you consider the information I want to share with you in that decision. I believe it to be relevant to your decision." The letter explained that Jones had received a mental evaluation as part of his effort to mount a defense of mental disease or defect based on his bipolar disorder, but the expert his counsel retained determined Jones was faking his symptoms. The letter then alleged this evaluation was seriously flawed. Jones claimed his counsel's failure to request a second evaluation constituted ineffective assistance of counsel.

Jones claimed the expert's evaluation was based on: (1) a presentence report from 1983 that was conducted at Larned in connection with his previous murder conviction that suggested a clinician believed he could be faking symptoms, (2) the fact that, although Jones had been diagnosed with bipolar disorder in 2016, he had stopped taking his medication for a period, and (3) Jones' history of mental health issues and contact with clinicians indicated he would know what to say in order to fake a condition.

Jones challenged the validity of this initial evaluation. Jones stated that, in connection to the presentence report from 1983, he had ultimately been diagnosed by Larned as in need of long-term inpatient care and treatment and that Larned had recommended against prison because of his treatment needs. Jones also stated that he had stopped taking his medication at times due to side effects that made it difficult for him to function at work. Jones further argued the expert considered none of the evidence from around the time the crime was committed in making his evaluation and that his findings contradicted the diagnoses made by at least two other doctors who had evaluated Jones at different times.

Jones then elaborated on the circumstances surrounding his arrest that he believes the expert should not have ignored. Jones said he was paroled in November 2016 and, as a condition of his parole, was ordered to receive treatment for bipolar disorder. He stated

that although he had requested treatment at Comcare, he received no medication for his condition for over two months following his release. Jones argued this led to him descending into a "manic state" which peaked with him committing the offenses underlying his conviction.

Jones recounted a series of events before the arrest that had placed him in Sedgwick County Jail. Jones said the day before his arrest, police picked him up at a Walmart around 9 p.m. when he refused to leave the store after being kicked out for trying to purchase "over 20,000 dollars of electronics and jewelry on debit cards I didn't have." After being booked and released at roughly 4 a.m. he walked to Via Christi Hospital to seek assistance for his mental health problems. Jones stated that after being admitted to the hospital he suddenly left and went to a gas station to try and use nonexistent debit cards to withdraw money from an ATM. Jones claimed he was acting delusional and psychotic at the gas station, which led to the police being called once again. After being booked into Sedgwick County Jail a second time, Jones said he was evaluated by the nurse practitioner who testified at his trial and diagnosed him with bipolar disorder with severe manic state and psychotic features. Jones claimed he was in a severe manic psychotic state when he later threated and kicked Sergeant Abbott several days later.

Jones argued all this information was available to his counsel and, given this knowledge, his counsel should have requested a second expert opinion. As a result, Jones alleged, his counsel presented no defense at all.

At the posttrial hearing, the district court first construed Jones' letter as a pro se motion for a new trial and therefore said it would not consider it because it was filed outside the statutory 14-day time limit. The court then allowed the parties to argue the timely motion for a new trial filed by defense counsel. In support of his motion, defense counsel said he was unable to obtain a second mental evaluation of Jones due to a lack of

6

resources and argued that the inability to seek additional testing impacted their ability to present an adequate defense. He also argued that, given the opportunity to seek additional testing, they could present evidence showing that Jones was not in "control [of his] faculties" when he committed the underlying offenses.

Near the end of the arguments, after Jones managed to get his attention, defense counsel informed the district court that Jones had intended his letter to be received as a supplement to the motion filed by counsel, and not as a separate motion. The district court agreed to consider the claims in the letter as a supplement to defense counsel's motion for a new trial but said the letter would not change the court's decision.

The court ultimately denied Jones' motion for a new trial. In discussing the merits, the district court first highlighted the difficulty of establishing a mental disease or defect defense under Kansas law and the deferential standard of review applied to ineffective assistance of counsel claims. The court pointed out that Jones' letter and the record revealed his counsel was aware of Jones' mental health issues and that the issue of a mental disease or defect defense was well researched and litigated by counsel. The court found defense counsel's decision not to present expert testimony in support of a mental disease or defect defense "was a strategic decision made after a thorough investigation of the law and the facts relevant to the options, which makes that decision, again, virtually unchallengeable." It also noted Kansas' defense of mental disease or defect requires establishing the defendant could not form the requisite intent to commit the charged crimes. The court found that none of the mental issues Jones raised signified he could not form the requisite intent to commit his crimes, nor did the video evidence show Jones could not form that intent.

Based on Jones' criminal history score of A, the district court sentenced Jones to a controlling term of 122 months.

ANALYSIS

Jones claims the district court erred in summarily denying his pro se motion for a new trial based on ineffective assistance of counsel. Jones claims he had a right to be represented by conflict-free counsel, and the court should have appointed substitute counsel to represent him in arguing those claims before dismissing his motion.

Jones first argues the district court's failure to appoint conflict-free counsel denied him of his right to counsel under the Sixth Amendment to the United States Constitution. He raises this argument for the first time on appeal. As a general rule, constitutional violations cannot be newly raised on appeal. That said, appellate courts may freshly consider constitutional issues

> "if the party trying to raise a new issue shows a recognized exception to the general rule. Those exceptions are:
> '(1) [T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision. *Harris*, 311 Kan. at 375.'" *State v. Allen*, 314 Kan. __, 497 P.3d 566, 570 (2020).

*State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). The right to counsel is a fundamental right. *State v. Loggins*, 40 Kan. App. 2d 585, 595, 194 P.3d 31 (2008). Moreover, deciding the merits of Jones' claim does not require us to make factual findings. As a result, we may exercise our discretion to review Jones' Sixth Amendment claim even though he makes it for the first time on appeal.

Jones relies on *State v. Sharkey*, 299 Kan. 87, 322 P.3d 325 (2014), to support his argument that the district court constructively denied his right to counsel by failing to

8

appoint conflict-free counsel to litigate Jones' ineffective assistance of counsel claim. The difference between *Sharkey*'s and Jones' motions for a new trial is the defendant in *Sharkey* timely filed his motions. Jones did not. Our Supreme Court distinguished timely and untimely motions for a new trial in *State v. Kingsley*, 252 Kan. 761, 851 P.2d 370 (1993*)*. A timely motion for a new trial is considered a critical stage of the criminal proceeding, while an untimely one is not. Since an untimely pre-appeal motion for a new trial is a collateral proceeding, the Sixth Amendment right to counsel does not apply. The right to counsel is determined instead by statute. See *Sharkey*, 299 Kan. at 95-96 (citing *Kingsley*, 252 Kan. at 766-67).

Because Jones' pro se motion for a new trial was untimely, the district court needed to view it as a postconviction motion and apply K.S.A. 22-4506 in determining whether Jones was entitled to appointment of substitute counsel. *State v. Kirby*, 272 Kan. 1170, 1193, 39 P.3d 1 (2002). K.S.A. 22-4506(b) provides that "if the court finds that the petition or motion presents substantial questions of law or triable issues of fact . . . the court shall appoint counsel . . . to assist such person." In *Kirby*, our Supreme Court clarified that when faced with an untimely pro se motion for a new trial alleging claims of ineffective assistance of counsel, the district court should "scrutinize the defendant's motion for signs of 'a realistic basis,' and if the motion appears to have merit, '"then the [court] in the exercise of its discretion should set the matter for hearing and appoint counsel to represent the defendant. . . ."'" 272 Kan. at 1193.

Since the district court is not required to appoint counsel for every posttrial motion, the decision of whether to appoint counsel rests within the court's sound discretion. *Kirby*, 272 Kan. at 1193. We thus review the district court's decision for abuse of its discretion. 272 Kan. at 1194; *State v. Jarmon*, 308 Kan. 241, 247-48, 419 P.3d 591 (2018). Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, i.e., no reasonable person would take the view adopted by the trial court; (2) based on an error of law, i.e., the discretion is guided by an erroneous legal

9

conclusion; or (3) based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. McDaniel*, 306 Kan. 595, 606, 395 P.3d 429 (2017). Jones bears the burden of showing the court abused its discretion.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test identified in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under this test, a defendant has the burden to establish: (1) the attorney's performance was deficient and (2) prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Galaviz*, 296 Kan. 168, 181, 291 P.3d 62 (2012).

"'Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'" *Chamberlain v. State*, 236 Kan. 650, 654, 694 P.2d 468 (1985).

The State contends that Jones' motion did not present substantial questions of law or fact since it only contained cursory complaints that his counsel did not seek a second opinion on Jones' mental health. The State argues defense counsel's decision not to seek a second mental evaluation due to a lack of resources after receiving an unfavorable initial evaluation was a strategic decision made after sufficient investigation and thus cannot sustain a successful ineffective assistance of counsel claim.

Jones argues his counsel was ineffective for: (1) failing to adequately investigate his mental illness, (2) advise him about pursing a mental disease or defect defense, and (3) presenting "no defense whatsoever." He argues his counsel's decision to forgo a second evaluation was not strategic but because of a lack of resources. He also cites

*Mullins v. State*, 30 Kan. App. 2d 711, 717, 46 P.3d 1222 (2002), for the argument that a defense counsel's decision to not hire an expert is unreasonable when there is no showing of a strategic reason for not hiring an expert.

In *Mullins*, a panel of this court heard an appeal stemming from a K.S.A. 60-1507 motion alleging ineffective assistance of counsel. Mullins had been convicted of aggravated criminal sodomy and aggravated indecent liberties with a child. He was convicted mainly based on the testimony of the victim, as there were no visual signs of sexual abuse and no witnesses to the alleged offenses, as well as expert testimony put on by the State. Trial counsel testified at the 60-1507 hearing that he did not investigate the possibility of hiring experts to refute the evidence put on by the State's experts or refute the reliability of the victim's testimony. Trial counsel also testified that he had insufficient time and resources to adequately defend Mullins and conceded that, in hindsight and with adequate resource, he would have hired an expert. And Mullins was able to produce uncontroverted evidence, based on the testimony of an expert witness at his 60-1507 hearing, that the use of experts in his type of case was crucial and this fact was well known at the time of Mullins' trial. The district court denied Mullins' motion after finding that few attorneys would have tried to secure expert testimony.

The panel began its analysis by noting that while the decision of whether to call a witness is a matter of trial strategy, "defense counsel cannot make a strategic decision against pursuing a line of investigation when he or she has not yet obtained facts upon which that decision could be made." *Mullins*, 30 Kan. App. 2d at 716. The appellate court reversed, finding the district court's conclusion that few attorneys would have sought an expert unsupported by the record, given the uncontroverted expert testimony put on by Mullins. The court noted that Mullins' counsel had shown no strategic reasons for his failure to consult or procure an expert and held that his performance was objectively unreasonable, satisfying the first prong of the *Strickland* test. *Mullins*, 30 Kan. App. 2d at 717.

11

Unlike the counsel in *Mullins*, Jones' counsel not only investigated the possibility of hiring an expert, but he secured a mental evaluation of Jones. Jones does not fault his counsel's selection of this expert, nor does he dispute his counsel's claim that a lack of resources prevented a second evaluation. He does not dispute the court's finding that his defense counsel was "well aware" of Jones' mental issues and that these issues were "well researched and litigated by counsel." He also does not claim his counsel should have presented the unfavorable evaluation in support of a mental defect defense. Instead, Jones faults the expert for not investigating his history and for determining Jones was faking his symptoms.

While defense counsel stated he could not procure a second evaluation due to lack of resources, the record shows he still presented evidence of Jones' mental state through both Jones and the jail nurse. He also argued in closing that Jones' mental state should excuse his behavior. Under these circumstances, and given *Strickland*'s high bar for ineffective assistance claims, the district court did not abuse its discretion in finding that counsel's decisions were strategic and his representation was not ineffective.

We likewise find the district court appropriately applied the second prong of the *Strickland* test, which requires Jones to show he was prejudiced by his counsel's ineffective assistance. As the district court noted, even if defense counsel had procured a second evaluation (and assuming it was favorable), Jones has not shown such evidence could negate his intent to commit the crimes of which he was convicted.

Under K.S.A. 2016 Supp. 21-5209, Jones would need to show that he lacked the culpable mental state required as an element of the crimes charged to avoid criminal liability. Jones was charged with battery against a law enforcement officer (which requires that he acted knowingly) and criminal threat (which requires that he acted with the intent to place another in fear). Jail staff testified that Jones stated he should not be in jail shortly before the incident, signifying his awareness that he was in prison and

12

interacting with law enforcement. The record also reveals Jones told Sergeant Abbott he planned to kick her before doing so. Given these facts, Jones has not shown a reasonable probability that, but for his counsel's alleged errors, the result of the proceeding would have been different, even with a favorable evaluation from a mental health expert.

The district court's finding that Jones' untimely pro se motion lacked merit was reasonable. We do not find its summary denial of the motion was in error.

*Constitutionality of K.S.A. 2016 Supp. 21-5209*

Jones next claims that K.S.A. 2016 Supp. 21-5209, which sets the requirements for asserting a defense based on mental disease or defect, violates his liberty interest under section 1 of the Kansas Constitution Bill of Rights. Jones argues that, at common law, defendants had a fundamental, natural right to assert an insanity defense. Specifically, Jones argues that defendants at common law had a natural right to avoid criminal liability if they did not understand the nature and quality of the act or did not know the wrongfulness of the act. Jones also alleges that a defendant's natural right to present an insanity defense is protected under section 1 of the Kansas Constitution Bill of Rights. Jones argues K.S.A. 2016 Supp. 21-5209 violates section 1 by replacing the common-law insanity defense with a "mens rea defense," requiring a defendant to show that, because of a mental disease or defect, he lacked the culpable mental state required as an element of the crime charged to avoid liability.

The State argues that Jones' claim is not properly before us, citing: (1) Jones lacks standing to challenge the constitutionality of K.S.A. 2016 Supp. 21-5209, since he does not argue that he would have qualified for the insanity defense as it existed in Kansas before K.S.A. 2016 Supp. 21-5209's enactment and (2) Jones raises this claim for the first time on appeal.

The general rule is that a party only has standing to challenge the constitutionality of a statute when it adversely impacts his rights. A party cannot challenge a statute because it might be applied unconstitutionally to others in situations not before the court. *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 508, 110 P.3d 438 (2005).

The State correctly points out that Jones, in part, challenges K.S.A. 2016 Supp. 21-5209 on the basis that it is applied unconstitutionally to others. Jones includes among his arguments that K.S.A. 2016 Supp. 21-5209 forecloses a defendant's ability to present an insanity defense to strict liability crimes with no mens rea requirement. Neither of Jones' crimes are strict liability offenses.

The other reason Jones lacks standing to challenge the constitutionality of K.S.A. 2016 Supp. 21-5209 is he is not alleging he suffered an adverse impact based on the statutory changes imposed on the insanity defense in Kansas. Jones was not barred from presenting a defense of mental disease or defect because of those statutory changes—he was barred from presenting this defense because he failed to submit an expert report. Jones does not argue the requirement that defendants must submit an expert evaluation is unconstitutional. Since he was not adversely affected by the alleged constitutional defect identified in his brief, he has no standing to raise it.

Since we agree Jones lacks standing to raise his constitutional challenge, we need not address whether he can newly raise it on appeal.

*Constitutionality of judicial determination of criminal history*

Finally, Jones argues the district court violated section 5 of the Kansas Constitution Bill of Rights and the Sixth Amendment when it made judicial findings on his prior convictions in sentencing him. Jones argues section 5 of the Kansas Constitution Bill of Rights preserves the right to a jury trial as it existed at common law in 1859 and,

at common law before this time, judicial findings about an offender's prior convictions could not elevate the punishment for a current crime of conviction. According to Jones, the revised Kansas Sentencing Guidelines Act (KSGA) violates this common-law right (and thus section 5) by allowing judicial fact-finding about a defendant's prior convictions in sentencing. See K.S.A. 2016 Supp. 21-6814(a). Jones argues such judicial fact-finding in sentencing also violated his Sixth Amendment right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Jones did not challenge the constitutionality of the KSGA at sentencing. As noted above, we normally do not consider newly raised constitutional issues on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Jones argues two of the recognized exceptions to this general rule apply here: "(1) [t]he newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case [and] (2) consideration of the newly asserted theory is necessary to serve the needs of justice or to prevent denial of fundamental rights." *State v. Jones*, 302 Kan. 111, 117, 351 P.3d 1228 (2015).

We agree with the State that the first exception does not apply, since Jones does not solely challenge imposing an elevated sentence and therefore determining this issue will not resolve the case. Further, if we agreed with him, the case would have to be remanded for further factual findings as to his criminal history. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 804, 466 P.3d 1207 (2020), *cert. denied sub nom. P. F. v. J. S.*, 141 S. Ct. 1464 (2021). Still, we may review Jones' claim under the second exception, as the right to a jury trial under section 5 of the Kansas Constitution Bill of Rights is a fundamental right. *State v. Rizo*, 304 Kan. 974, 979-80, 377 P.3d 419 (2016). We will exercise our discretion to do so, but our review is short-lived.

After Jones filed his brief, the Kansas Supreme Court rejected the same arguments he makes here in *State v. Albano*, 313 Kan. 638, 487 P.3d 750 (2021). In *Albano*, the Supreme Court held that "the KSGA provisions authorizing the court to make criminal history findings for purposes of imposing a sentence do not violate section 5 because such judicial findings do not impair the traditional functions of the jury in Kansas criminal proceedings." 313 Kan. at 657. The court found that Kansas' earliest decisions recognize the traditional function of the court is to determine punishment and to make findings relevant to punishment, including a defendant's criminal history. 313 Kan. at 657.

We see no indication that our Supreme Court is departing from *Albano*, so neither will we. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (noting Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless some indication court is departing from previous position). Because our Supreme Court has found the judicial determination of prior convictions under the KSGA is constitutional under the Sixth Amendment, we reject this argument as well.

Affirmed.