No. 106,150

STATE OF KANSAS, *Appellee*, v. TYJUNA M. SHARKEY, *Appellant*.

(322 P.3d 325)

Opinion filed April 11, 2014.

*Michelle A. Davis*, of Kansas Appellate Defender Office argued the cause and was on the brief for appellant.

*Boyd K. Isherwood*, chief appellate attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Tyjuna M. Sharkey appeals from his jury trial conviction for aggravated indecent liberties with a child, in violation of K.S.A. 21-3504(a)(3)(A). Sharkey raises three issues, two of which have been resolved.

One issue, an error in completing the journal entry to include lifetime electronic monitoring, even though that condition had not been announced at the time of sentencing, has been corrected through a nunc pro tunc journal entry and is moot.

In a second issue, Sharkey argues the State presented insufficient evidence that he acted with both the intent to arouse or satisfy his sexual desires and the intent to arouse or satisfy the sexual desires of the alleged victim. Sharkey contends the State was required to prove both alternative means of the intent requirement because the jury was instructed on both means. See *State v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010) (in alternative means case, jury need not be unanimous as to which means defendant utilized but there must be substantial competent evidence of each instructed means), *overruled on other grounds by State v. Nunez*, 298 Kan. 661, 316 P.3d 717 (2014). Subsequent to Sharkey filing his appellate brief, however, this court held in *State v. Britt*, 295 Kan. 1018, 1025-26, 287 P.3d 905 (2012), that the intent element of K.S.A. 21-3504(a)(3)(A), which was the basis for the jury instruction, does not state alternative means. Sharkey has not presented any compelling reason to reverse *Britt's* holding. Consequently, we reaffirm our holding in *Britt*, which resolves the issue against Sharkey; and without further discussion, we reject Sharkey's arguments on this issue.

This leaves as the sole issue for our consideration Sharkey's claim that the trial judge erred in denying his pro se motions for new trial—based on allegations of ineffective assistance of counsel—

without first appointing new conflict-free counsel to assist him in arguing the motions. We hold that this argument has merit because the effect of the trial judge's failure to inquire into the nature of the conflict and appoint new counsel was to deny Sharkey his right under the Sixth Amendment to the United States Constitution to have the effective assistance of counsel at a critical stage of the criminal proceedings against him. We remand the case for appointment of new counsel and consideration of Sharkey's motions for new trial.

### FACTS AND PROCEDURAL BACKGROUND

Sharkey's conviction arose from his contact with 12-year-old T.W., who was a friend of Sharkey's stepdaughter. During a sleepover at Sharkey's house, T.W. awoke when she felt something heavy pushing against the back of her body. T.W. found her pajama bottoms and panties had been pushed down to her upper thighs and Sharkey was "forc[ing]" or "shov[ing]" his penis between her buttocks in an up-and-down motion, to "kind of like make it fit." T.W. pushed Sharkey's shoulder and was able to pull away and flee.

Based on T.W.'s allegations, Sharkey was charged with aggravated indecent liberties with a child. Sharkey was eventually tried two times. In his first trial, which resulted in a conviction, the State presented a DNA expert who linked Sharkey to semen found on T.W.'s pajamas. Posttrial, Sharkey sought and was granted a new trial when additional DNA testing showed the "presence of at least a third individual"—someone other than T.W. or Sharkey—as a secondary or weaker source matching the DNA profile. At the second trial, which is the subject of this appeal, Sharkey presented expert testimony explaining the third contributor could have been Sharkey's wife or her teenage son. The defense expert suggested the DNA could have been postcoital discharge from Sharkey having sex with his wife and the fluids could have been transferred to the pajamas. Based on this testimony, Sharkey built a defense around the suggestion that T.W.'s story had been concocted in concert with his wife and her daughter because they were upset with him. The second jury again convicted Sharkey.

Seven days after the verdict and before sentencing, Sharkey filed two pro se motions. In the motions, Sharkey requested a new trial and new counsel, basing his arguments on allegations of ineffective assistance of defense counsel. Previously, at various stages of both trials, Sharkey had filed similar motions and had cycled through several attorneys. During the second trial, Sharkey had made complaints against his attorney, at least some of which were similar to those in his posttrial motions.

*Pro Se Motions at Issue*

In one motion, labeled "Pro Se Motion for Re-Trial," Sharkey argued he was entitled to a new trial because his counsel kept him "in the blind" throughout the trial and failed to explain "all and every details, motions, [and] stipulations along with reasons." Sharkey claimed that he was "hoodwinked" into believing it was defense counsel's strategy to forego calling Sharkey's family members who would have testified "as to the nature of the madness that was happening in the year of 2006" and that Sharkey was "in a rocky relationship with my x wife and those girls." Sharkey further stated that he was "hoodwinked into not taking the stand" in his own defense, and he complained that his counsel "only objected twice" during trial and "refuse[d] to object" when the State's DNA expert "had to go back and re-state her statement."

In the other motion, a "Pro Se Motion for Re-Appointment of Counsel," Sharkey alleged that defense counsel did not properly prepare him for trial and failed to investigate, present a defense, and call witnesses to rebut the "the victim[']s claims that there was no problems within the relationship at this time." Sharkey asked the court to grant "a fair trial in a way that is fair to both parties."

At a joint motions and sentencing hearing, the trial judge acknowledged Sharkey's pro se motions, as well as separate motions filed by defense counsel. In addressing Sharkey's pro se motions, the judge only asked one question of Sharkey, "Do you wish to address the Court?" Sharkey answered, "No." During this portion of the hearing, defense counsel made no comments or arguments.

The court then made findings, addressing only one of Sharkey's complaints:

"[A]fter reviewing the motions, the defendant chose not to testify and has alleged various reasons in his motion that he felt like he was hoodwinked . . . , but the Court recognizes there were some serious downsides to the defendant testifying and being cross-examined, and he has a Fifth Amendment right to remain silent and not to incriminate himself, and he chose to exercise that right. The jury was told that with the Court's instruction and heard that in connection with the verdict, so the motion for new trial and motion for reappointment of counsel will be denied."

Sharkey's counsel then argued the motions he had filed on Sharkey's behalf. The trial judge denied those motions as well and immediately began sentencing proceedings. The judge imposed a life sentence with a mandatory minimum term of 25 years' imprisonment under Jessica's Law. See K.S.A. 21-4643(a)(1)(C). As previously mentioned, the original journal entry included an order that the judge did not state during the hearing—that "lifetime electronic monitoring" was ordered. The sentencing court later corrected the error with an amended journal entry in which lifetime electronic monitoring was deleted, rendering moot any issue regarding the journal entry.

Sharkey appeals, and this court has jurisdiction under K.S.A. 22-3601(b)(1) (conviction of off-grid crime; maximum sentence of life imprisonment imposed; sentence imposed pursuant to K.S.A. 21-4643).

### ERROR IN FAILING TO INQUIRE INTO NATURE OF CONFLICT AND NOT APPOINTING NEW CONFLICT-FREE COUNSEL

Sharkey contends the trial judge should reasonably have known that he and his trial attorney had a conflict of interests due to his allegations that his attorney was ineffective. In such a situation, he argues the judge was obligated to inquire into a potential conflict and then to appoint new conflict-free counsel. In this appeal, Sharkey rests his argument on the judge's failure to conduct an inquiry or appoint new conflict-free counsel to assist him in arguing his pro se new-trial motions. He does not argue the merits of his motions or request us to grant him a new trial. Instead, he seeks a remand and conflict-free counsel to argue the motions for him.

Before discussing the substance of the argument, we note that we have framed the issue in the context of considering both of

Sharkey's motions as ones for new trial. One motion clearly requests a retrial. The other, while unambiguously requesting new counsel, is less clear regarding a new-trial request. Nevertheless, in his second motion, Sharkey asked "that the Courts will grant me a fair trial," which we read to be a request for a new trial. See *State v. Kelly*, 291 Kan. 563, Syl. ¶ 1, 244 P.3d 639 (2010) (pro se pleadings are to be liberally construed to give effect to the content). Consequently, our analysis is controlled by caselaw addressing the right to the effective assistance of counsel when presenting a motion for new trial.

Turning to the substance of Sharkey's arguments, in order to analyze whether the trial judge erred by failing to appoint conflict-free counsel to represent Sharkey on his motions, we will consider three questions raised by the parties' arguments: (1) Was Sharkey entitled to counsel under the Sixth Amendment to the United States Constitution to argue the motions? (2) If so, was the trial judge required to initiate an inquiry regarding defense counsel's possible conflict of interests to ensure that Sharkey's Sixth Amendment right to counsel would not be violated? and (3) In order to be entitled to a new hearing with new conflict-free counsel, must Sharkey show he was prejudiced by defense counsel's representation at the motions hearing?

### 1. *Sharkey Had a Right to Conflict-Free Counsel*

The first question arises because the State argues Sharkey was not entitled to the assistance of counsel at the hearing on his motions. The State takes the position that the motions were not heard during a critical stage of the proceedings against Sharkey because he had already been convicted.

The basis for the State's argument is the principle that the right to an attorney, as guaranteed a criminal defendant by the Sixth Amendment to the United States Constitution, attaches only to critical stages of a felony proceeding. See *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012). This right is made applicable to the states through the Fourteenth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh.*

*denied* 467 U.S. 1267 (1984); *Avery v. Alabama*, 308 U.S. 444, 446, 60 S. Ct. 321, 84 L. Ed. 377 (1940); *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012). Because Sharkey only makes a Sixth Amendment claim and decisions of the United States Supreme Court control our application of rights guaranteed by the United States Constitution, we must determine whether the hearing on the motions for new trial was a critical stage of the proceedings against Sharkey. If not, the State is correct that we need not be concerned with whether Sharkey's counsel had a conflict because Sharkey did not have the right to effective assistance of counsel.

The United States Supreme Court has not directly answered the question of whether a hearing on a motion for new trial is a critical stage of the proceedings. Nevertheless, the Court has provided guidance by identifying the starting and ending points of a proceeding—the two ends of the spectrum—where the right to counsel applies. At one end of this spectrum, the Court has determined that "[a] criminal defendant's Sixth Amendment right to counsel attaches after judicial proceedings have been initiated against him." *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013), (citing *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S. Ct. 2204, 115 L. Ed. 2d 158 [1991]), *cert. denied* 134 S. Ct. 421 (2013). At the other end, "the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987); see *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Ross v. Moffitt*, 417 U.S. 600, 606-07, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Kitchen v. United States*, 227 F.3d 1014, 1018 (7th Cir. 2000) ("[O]nce the direct appeal has been decided, the right to counsel no longer applies [citing *Finley*, 481 U.S. at 557].").

The United States Circuit Courts of Appeal have applied these principles to the question of whether a new-trial motion is a critical stage of the proceedings against a felony defendant. They have pinpointed three categories: (1) timely motions for new trial filed before a direct appeal, (2) motions filed after a direct appeal, and (3) untimely motions filed before a direct appeal.

As to the first category, the "circuit courts have held that a new-trial motion filed after the trial but before the appeal is a critical

stage with the attendant Sixth Amendment right to counsel." *Williamson*, 706 F.3d at 416; see *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011) ("Every federal circuit court to address the question of whether the post-trial, pre-appeal time period for making a motion for new trial is a critical stage has concluded that it is.").

As to the second category, the Circuit Courts of Appeal have determined that "[a]s a corollary, a petitioner has no Sixth Amendment right to counsel in order to mount a collateral attack to his conviction. [Citation omitted.]" *Williamson*, 706 F.3d at 416; see *Finley*, 481 U.S. at 555 (the right to counsel extends no further than direct appeal); *Kitchen*, 227 F.3d at 1019 (stating "it is well established that there is no constitutional right to counsel in collateral proceedings"). This means that the second category—a new-trial motion filed after the direct appeal—"is not a critical stage, but rather a collateral proceeding with no attendant Sixth Amendment right to counsel. [Citations omitted.]" *Williamson*, 706 F.3d at 416.

Addressing the third category—where a new-trial motion is filed before the direct appeal is completed but after the time limitation for such a motion—several federal Circuit Courts of Appeal, including the Fourth Circuit Court of Appeals in *Williamson*, have determined motions for new trial filed after the time limitation but before the direct appeal are viewed as a collateral proceeding for which there is no right to counsel. These courts reason that a late motion does not become part of the direct appeal and, therefore, does not fall within the Supreme Court's caselaw guaranteeing a right to counsel through the completion of the direct appeal. See, *e.g.*, *Williamson*, 706 F.3d at 417-18.

In this case, the State does not discuss these or any other federal authorities but relies on Kansas cases adopting the same position as the federal court in *Williamson*—there is no Sixth Amendment right to the assistance of counsel when a preappeal motion for new trial is untimely. For example, in both *State v. Kirby*, 272 Kan. 1170, 1192-96, 39 P.3d 1 (2002), and *State v. Kingsley*, 252 Kan. 761, 766-67, 851 P.2d 370 (1993), this court held a trial judge did not err in deciding an untimely motion for new trial without appointing counsel for the defendant. Based on these cases, the State

argues the trial judge was not obligated to appoint new counsel to assist Sharkey with his pro se new-trial motions.

The State's argument is misplaced, however, because these authorities do not apply to the circumstances of this case where the new-trial motions were timely. Sharkey's motions were filed 7 days after the verdict was entered, well within the 14-day period for filing a motion for new trial. See K.S.A. 2013 Supp. 22-3501(1); L. 2010, ch. 135, sec. 25 (amending previous 10-day period to 14 days effective July 1, 2010). Furthermore, like the federal courts, this court in *State v. Andrews*, 228 Kan. 368, 375, 614 P.2d 447 (1980), recognized the distinction between a motion for new trial filed within the statutory limitation period and one that was not filed within this time, holding that the right to counsel applied to the timely motion but not the untimely one.

"We think it is clear that the customary motion for a new trial which must be filed within ten days [now 14 days] under K.S.A. 22-3501 and which is principally for the purpose of calling to the attention of the trial court alleged trial errors *is a stage of the criminal proceedings* which falls within the purview of K.S.A. 1979 Supp. 22-4503, and *counsel must be provided for the purposes of such a motion.* Are subsequent motions, filed after the ten [now 14] day period and frequently after an unsuccessful appeal, seeking a new trial on the grounds of newly discovered evidence, also within the purview of the statute? We think not." (Emphasis added.) *Andrews*, 228 Kan. at 375.

As further explained in *Kingsley*, 252 Kan. at 766-67, an untimely motion is considered under K.S.A. 22-4506, which applies to collateral attacks on a conviction. In such a case, a trial judge "may determine that the motion, files, and records of the case conclusively show that the movant is entitled to no relief, in which case [the judge may] summarily deny the motion without appointing counsel." *Albright v. State*, 292 Kan. 193, 196, 251 P.3d 52 (2011). The determination of whether the motion presents substantial questions of law justifying the appointment of counsel " 'rests within the sound discretion of the trial court.' [Citation omitted.]" *Kingsley*, 252 Kan. at 766; see *Albright*, 292 Kan. at 196; *Kirby*, 272 Kan. at 1193-94.

In contrast, as stated in *Andrews*, 228 Kan. at 375, timely motions for new trial fall under K.S.A. 22-4503(a), which provides in

relevant part: "A defendant charged by the state of Kansas in a complaint, information or indictment with any felony is entitled to have the assistance of counsel at every stage of the proceedings."

In summary, a motion for new trial filed within the 14-day limitation period in K.S.A. 2013 Supp. 22-3501(1) and before a direct appeal is a critical stage of the criminal proceedings, and a defendant has a Sixth Amendment right to the representation of counsel at a hearing on the motion. In this case, because Sharkey's motions were timely, he had a right to counsel, based on the Sixth Amendment to the Constitution, at the hearing on his timely pro se motions for new trial. Additionally, "[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. [Citations omitted.]" *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981).

Hence, the State's argument that Sharkey did not have a right to conflict-free counsel to assist him with his pro se new-trial motions is without merit.

## 2. *Trial Judge's Duty to Inquire into Nature of Conflict*

Having determined that Sharkey had a right to conflict-free counsel, we reach Sharkey's contention that the trial judge was obligated to initiate an inquiry regarding defense counsel's possible conflict of interests in order to ensure that Sharkey's Sixth Amendment right to counsel would not be violated. He argues the duty to inquire was triggered when (1) he filed motions alleging his attorney was ineffective and (2) his attorney left Sharkey to argue the merits of the motions on his own.

As Sharkey argues, "[i]t is the task of the district judge to ensure that a defendant's right to counsel under the Sixth Amendment to the United States Constitution is honored. [Citations omitted.]" *State v. Carter*, 284 Kan. 312, 321, 160 P.3d 457 (2007). In order to fulfill this duty, "[w]here a trial court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further." *State v. Vann*, 280 Kan. 782, Syl. ¶ 1, 127 P.3d 307 (2006). "If an appropriate inquiry is made, the district court's decision is reviewed

under an abuse of discretion standard. [Citations omitted.] But a district court abuses its discretion when it makes no inquiry into the nature of the conflict. [Citation omitted.]" *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013).

Because the trial judge in this case did not make an inquiry in light of the apparent conflict between Sharkey's interests and those of his attorney, Sharkey argues he is entitled to a remand and the appointment of new conflict-free counsel. For support he cites *State v. Toney*, 39 Kan. App. 2d 1036, 187 P.3d 138 (2008).

In *Toney*, the defendant claimed the district court failed to inquire about a possible conflict with his counsel during a hearing on a motion to withdraw plea based in part on allegations of ineffective assistance of counsel. At the hearing, Toney's counsel candidly acknowledged her conflict to the court, and the prosecutor agreed. After Toney personally addressed the district court about his concerns, the court summarily denied the motion without appointing substitute counsel or conducting an evidentiary hearing.

On appeal, Toney argued the situation placed his counsel in an actual conflict with Toney's interests and violated his rights under the Sixth Amendment. The Court of Appeals noted that "[a]lthough the district court asked some questions of Toney, these inquiries did not directly address the conflict issue, and no questions were asked of his public defender." *Toney*, 39 Kan. App. 2d at 1041.

The Court of Appeals agreed that Toney's counsel had an actual conflict of interests in representing Toney at the hearing on the motion to withdraw plea:

"In order to faithfully and effectively represent Toney at the hearing, the public defender would be obligated to advocate and prove her own professional ineffectiveness. On the other hand, in order to defend herself against Toney's allegations of ineffectiveness, the public defender would be required to advocate against her client's legal position. This obviously placed the public defender in a tenuous position." *Toney*, 39 Kan. App. 2d at 1042.

The Court of Appeals concluded that counsel's conflicted representation "necessarily undermined any possibility that Toney's motion would be successful." *Toney*, 39 Kan. App. 2d at 1044.

As in *Toney*, Sharkey's defense counsel did not argue his own ineffectiveness, nor did he seek to withdraw so that Sharkey could be represented by conflict-free counsel at the motions hearing. Further, no evidence was presented in support of Sharkey's pro se motions, and defense counsel did not make any statement regarding those motions. Because of defense counsel's inaction, Sharkey was essentially required to present pro se legal arguments in support of his motions for new trial even though the State was represented by counsel.

Under these circumstances, we agree with the *Toney* court that the potential of a conflict of interests was apparent. Faced with this conflict, the trial judge was required to make an appropriate inquiry into the conflict, and the failure to do so was an abuse of discretion. See *Stovall*, 298 Kan. 362, Syl. ¶ 2; *Carter*, 284 Kan. at 321; *Vann*, 280 Kan. 782, Syl. ¶ 1; accord *Mickens v. Taylor*, 535 U.S. 162, 168-70, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002). Granted, Sharkey had previously made complaints against his attorney, and the trial judge had previously asked him questions about his grievances. Nevertheless, when Sharkey filed the posttrial motions, the judge had a duty to explore the new allegations and determine whether there had been a breakdown in the attorney-client relationship or any other change in circumstances that warranted the appointment of a new attorney.

The State suggests the trial judge fulfilled his obligation by giving Sharkey the opportunity to argue his motions on the record. Because Sharkey declined, the State advances the invited error rule— a litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal. See *State v. Kirtdoll*, 281 Kan. 1138, Syl. ¶ 8, 136 P.3d 417 (2006); *State v. Saleem*, 267 Kan. 100, 109, 977 P.2d 921 (1999). We disagree. As we recently stated:

"A district court does not fulfill its obligation to insure a criminal defendant's right to effective assistance of counsel under the Sixth Amendment to the United States Constitution at sentencing or at a hearing on a motion for new trial by merely providing the defendant with an opportunity to make a pro se statement in lieu of affording him or her the opportunity to have adequate representation

from an informed, prepared, and effective attorney." *Stovall*, 298 Kan. 362, Syl. ¶ 6.

Under our holding in *Stovall*, simply allowing a defendant to make a statement regarding his or her complaints is an insufficient inquiry. We recognize, however, that some past cases took a different view. For example, in *State v. Richardson*, 256 Kan. 69, 883 P.2d 1107 (1994), the trial judge made no additional inquiry after a defendant expressed the reasons for her dissatisfaction with her attorney. Nevertheless, this court determined the judge had not abused his discretion, in part because the judge had fully addressed the defendant's complaints, which this court felt showed that the judge "was not uninformed on the relationship." 256 Kan. at 82. Even if we were to adhere to a position that a judge's duty is fulfilled by giving the defendant an opportunity to make a statement, which we are not inclined to do in light of our recent decision in *Stovall*, the circumstances of this case are distinguishable from *Richardson* because the trial judge did not fully address Sharkey's complaints in making findings and denying Sharkey's motions. As a result, we cannot be assured the judge fully understood Sharkey's position.

When Sharkey indicated he was not going to make a statement, the trial judge should have asked questions to assure himself that he was fully informed of the various reasons for Sharkey's complaints. Because the judge failed to make any inquiry, we conclude the trial judge abused his discretion.

3. *Showing of Prejudice Not Required*

The third question to be addressed is the effect of this abuse of discretion and, specifically, whether, in order to have the judge's ruling reversed, Sharkey must show he was prejudiced by defense counsel's representation at the hearing on the pro se motions. The State contends that Sharkey's arguments should fail—and the case should not be remanded for a new hearing with new counsel— because Sharkey has not shown that he was prejudiced "in any manner" by the conflict. More specifically, the State complains that Sharkey does not claim that his "sentencing hearing" was compromised by defense counsel's legal representation. This argument

shifts the focus of this appeal, however, which is on the motions hearing, not sentencing. The State does not make any particular argument in support of its position that Sharkey had to demonstrate he was prejudiced by defense counsel's representation at the hearing on his pro se new-trial motions.

Even if the State had intended to include the motions hearing in its argument about prejudice, such an argument is without merit. Although the State does not cite *Strickland,* 466 U.S. 668, the State appears to derive its prejudice argument from *Strickland,* which generally applies to claims of ineffective assistance of counsel based on counsel's performance. Under the *Strickland* standard, a defendant must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial. *Strickland,* 466 U.S. at 687; *Edgar v. State,* 294 Kan. 828, 837, 283 P.3d 152 (2012); *Chamberlain v. State,* 236 Kan. 650, 656-57, 694 P.2d 468 (1985); see, *e.g., Holmes v. State,* 292 Kan. 271, 274-75, 252 P.3d 573 (2011). But in contrast to cases falling under *Strickland,* claims of ineffective assistance of counsel based upon a conflict of interests are analyzed somewhat differently under *Mickens,* 535 U.S. at 166.

The *Mickens* Court distinguished three categories of ineffective assistance of counsel claims brought under the Sixth Amendment. See *Galaviz,* 296 Kan. at 181-82 (discussing *Mickens,* 535 U.S. at 166). The first category includes cases in which it is claimed that counsel's performance was so deficient that the defendant was denied a fair trial. These claims are controlled by *Strickland,* 466 U.S. 687, 694. It is this standard that would apply if we were determining the merits of Sharkey's new-trial motions. The second category applies when the assistance of counsel was denied entirely or denied at a critical stage of the proceedings. *United States v. Cronic,* 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), defines the standard that applies to these claims. The third category includes situations where the defendant's counsel "actively represented conflicting interests." *Mickens,* 535 U.S. at 166.

The present appeal falls into the second *Mickens* category—the *Cronic* exception—where the complete denial of the assistance of

counsel or the denial of counsel at a critical stage of the proceedings presents " 'circumstances of [such] magnitude' " that a court "presumes a probable effect upon the outcome" and "a case-by-case inquiry [of prejudice] is unnecessary." *Mickens*, 535 U.S. at 166 (citing *Cronic*, 466 U.S. at 658-59). For the *Cronic* exception to apply in circumstances where a defendant is represented by counsel, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L. Ed. 2d 914, *reh. denied* 536 U.S. 976 (2002). Of course in this case, the subject of this appeal is not whether the entire trial and verdict was compromised; it is the trial judge's ruling on the pro se motions for new trial that was compromised. Significantly, the *Cronic* exception can apply to a complete denial of representation during a critical stage of the proceedings, see *Mickens*, 535 U.S. at 166, and, as we have discussed, the motions for new trial were presented during such a stage.

Under *Cronic*, Sharkey was constructively denied his right to counsel because of his attorney's conflict of interests; he effectively had no legal representation at the motions hearing. See *Mickens*, 535 U.S. at 172 n.5 (stating that an " 'actual conflict,' " for Sixth Amendment purposes, is necessarily a conflict of interest adversely affecting counsel's performance). This leads to a presumption of prejudice. See *Miller v. Martin*, 481 F.3d 468, 472 (7th Cir. 2007) (after attorney stood mute at sentencing hearing, held "effective abandonment of a defendant at sentencing calls for the application of *Cronic*").

In conclusion, Sharkey was denied the assistance of counsel at a critical stage of the criminal proceedings and prejudice is presumed. Therefore, this case is remanded with instructions to hold a new hearing on Sharkey's pro se new-trial motions with new conflict-free counsel appointed to argue the motions. If on remand the trial judge denies the motions, finding no ineffective assistance of trial counsel, a new trial is unnecessary. But if the trial judge grants the motions, finding ineffective assistance of trial counsel, a new trial should be conducted and trial counsel appointed.

Affirmed in part, reversed in part, and remanded with directions.