NOT DESIGNATED FOR PUBLICATION

No. 119,531

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY A. AMMONS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed September 13, 2019. Affirmed.

*Carol Longenecker Schmidt* and *James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE, J., and STEVEN E. JOHNSON, District Judge, assigned.

PER CURIAM: Anthony A. Ammons appeals his convictions for kidnapping, aggravated robbery, and criminal possession of a weapon by a convicted felon. He claims the trial court committed several errors and insufficient evidence supported his conviction for kidnapping. For reasons we explain below, we disagree with Ammons and affirm the district court.

1

On an evening in August 2016, Rafael Valenzuela was working at a Subway in Wichita. After closing the store around 10 p.m., Valenzuela was taking out the trash when an individual with shoulder length hair wearing a red shirt, white cap, and a blue and grey glove approached him. The man asked him if he had anything to eat, and Valenzuela told him he had nothing for him.

The man pulled up his shirt, showed Valenzuela a revolver tucked into his waistband, and then pulled out the revolver a few seconds later. The man said, "[I]f you don't have anything to eat, then give me the money." Valenzuela told the man he did not have any money and asked what he wanted him to do. The man told Valenzuela to go inside the store. Valenzuela led the man, who placed the gun back into his waistband, into the store to the cash register. When they reached the cash register, the man pointed the gun at Valenzuela and asked him to put the money—about $250 to $300 in bills and change—in a Subway sandwich bag. Valenzuela complied. The man told Valenzuela twice that if he did not hurry up, he would shoot him. The man also took an empty wallet that a customer had left at the Subway. After taking the money and empty wallet, the man left the store through the back door. Valenzuela immediately called 911 to report an armed robbery. He stayed at the register while making the call, watching on a surveillance camera screen and through the drive-thru window as the man left.

Officers from the Wichita Police Department later found and arrested Ammons in a skate park near the restaurant. Ammons told one officer that he found the wallet, Subway bag, and revolver in the skate bowls and "thought he just got lucky." Ammons also told the officer that when he arrived at the skate park, a man who matched the description of the individual who had robbed the Subway "popped out" of one of the skate bowls and ran toward the railroad tracks to the east.

The State ultimately charged Ammons with kidnapping in violation of K.S.A. 2016 Supp. 21-5408(a)(2), a severity level 3 person felony; aggravated robbery in violation of K.S.A. 2016 Supp. 21-5420(b)(1), a severity level 3 person felony; and criminal possession of a weapon in violation of K.S.A. 2016 Supp. 21-6304(a)(2), a severity level 8 nonperson felony.

The district court held a three-day jury trial in February 2018. Several witnesses testified at trial on the State's behalf, including Valenzuela and officers from the Wichita Police Department. The State admitted several exhibits at trial, including surveillance video from the Subway the night of the robbery, some items worn and used by the suspect that officers found nearby, and photographs taken by a forensic investigator. Valenzuela testified that State's Exhibit 30 appeared to be the same revolver the man used that night.

After the State rested, Ammons moved for judgment of acquittal, arguing that the State failed to make a prima facie showing that he committed the crimes charged. The trial court denied the motion, finding that a rational finder of fact could fairly conclude that Ammons was guilty beyond a reasonable doubt of all crimes charged.

Ammons declined to testify or present any evidence in his defense. He then renewed his motion for judgment of acquittal, citing the same grounds as the previous motion. The trial court denied the renewed motion, finding that there was substantial and competent evidence on which a rational fact-finder could rely to conclude guilt on all the charges.

The trial court instructed the jury on the kidnapping charge in Instruction No. 6:

> "In Count 1, the Defendant, Anthony A. Ammons, is charged with Kidnapping. The defendant pleads not guilty.

3

"To establish this charge, each of the following claims must be proved:

"1.    The Defendant took or confined [Valenzuela] by force or threat;

"2.    The Defendant did so with the intent to hold [Valenzuela] to facilitate flight or the commission of any crime.

"3.    This act occurred on or about the 6th day of August, 2016, in Sedgwick County, Kansas.

"The State must prove that the defendant committed the crime intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State or cause the result complained about by the State.

"The Defendant is charged in Count 1 with alternative means of committing this crime, i.e. by 'took' or by 'confined'. The difference involves an element of the completed crime.

"You must decide each alternative separately on the evidence and law applicable to it, uninfluenced by your decision as to the other alternative charge.

"The Defendant may be convicted on or acquitted on any or all of the alternative means charged in Count 1, and your findings as to each alternative must be stated in a verdict form signed by the Presiding Juror."

During deliberations, the jury sent a note to the trial court asking: "What is the legal definition of took and confined vs simply took and confined separately?" After conferring with counsel, the trial court responded with a typewritten note—signed by the district judge, the prosecutor, and Ammons' defense counsel—that stated: "The Court cannot give a 'legal definition' of 'took' or 'confined.' They are ordinary words and should be given their ordinary meaning. Please re-read instruction No. 6 and refer to the Verdict Form."

4

The jury found Ammons guilty of kidnapping based on "took," guilty of aggravated robbery, and guilty of criminal possession of a weapon by a convicted felon.

The day after trial, Jama Mitchell, Ammons' defense counsel, filed a motion for new trial referencing the motion for judgment of acquittal that the trial court denied at trial. Two weeks later, Ammons filed a pro se motion to dismiss based on an alleged violation of his speedy trial rights, but the trial court did not schedule a hearing on the motion.

One month after the trial, Ammons filed a pro se motion for new counsel, referencing two pro se motions the clerk's office inadvertently had forwarded to Mitchell. Ammons claimed that counsel was ineffective and that he was entitled to conflict-free counsel to be appointed in the prosecution of his motions. Ammons requested that

> "new counsel should be afforded the opportunity to not only adopt his motions for New Trial and Judgment of Acquittal, but supplement said pleadings, due to the delay in bringing motions before the court [that] further demonstrates Ms. Mitchell's ineffectiveness, that defendant had since complained about in his complaint filed with this court on December 4, 2017. (see attachment)"

Rather than attaching a copy of the pro se motions that he claimed had been inadvertently forwarded to his attorney instead of being filed, Ammons attached a copy of a different pro se motion he filed two months before trial, titled "Complaint." In that motion he explained his dissatisfaction with Mitchell's representation, claiming that she failed to keep him reasonably informed about the status of his case in a way to allow Ammons to make informed decisions. He also alleged that Mitchell failed to provide timely access to discovery documents, took his legal matters lightly and acted as if his case was of no importance, and neglected his case. The trial court set the motion for hearing on March 23, 2018.

5

Within the next week, Ammons filed two more pro se motions. One requested that the trial testimony be reduced to writing for the appeals process, and the other was another motion to dismiss based on an alleged violation of his speedy trial rights. The trial court clerk's office forwarded the motion for trial testimony to Mitchell but scheduled a hearing for April 13, 2018, on the renewed motion to dismiss.

The next week, Ammons filed a pro se motion requesting a hearing on his motion for new counsel on or before March 30, 2018. He objected to the continuance of that hearing from March 23, 2018, without his consent and reiterated his displeasure with Mitchell for the unprofessional handling of his case. The trial court forwarded this motion to defense counsel.

The trial court considered Ammons' pro se and counselled motions at a sentencing hearing on March 30, 2018. The trial court began that hearing by summarily dismissing all pro se motions that did not directly request appointment of new counsel based on the doctrine that a defendant is not entitled to hybrid representation under *State v. McKessor*, 246 Kan. 1, 12, 785 P.2d 1332 (1990). The trial court explained that Ammons' pro se motion for new counsel referenced pro se motions filed on February 16, 2018, which were not reflected in imaging.

The trial court then asked Ammons to explain the reasons for his dissatisfaction with Mitchell and how Mitchell had failed to keep him reasonably informed to allow him to make reasonable requests for information. Ammons responded that Mitchell told him the State had definitive proof of DNA evidence on a firearm involved in the aggravated robbery in this case but that his review of the relevant paperwork showed the DNA evidence was inconclusive. He claimed Mitchell intentionally misled him by telling him the State had definitive proof connecting him to the charged crimes.

When the trial court asked Ammons about the conflict of interest between him and Mitchell, he responded that "she was not working with me at all. As she would say, she was busy. She was . . . overbooked. She had a lot of cases." Ammons concluded by requesting a new trial, and the trial court explained that Mitchell had filed a motion for new trial on his behalf.

Upon questioning, Mitchell explained that she had inadvertently placed a lab report from another case involving Ammons into the case file, which led her to believe that the lab report belonged to the current case even though the State presented no DNA evidence at trial. Noting her response, the trial court explained that "the real standard" to consider would be "whether that newly discovered evidence is of such material significance that it is likely to cause a different result at retrial." The trial court summarized the evidence presented by the State at trial, including the surveillance video of the robbery, and found that "even if that DNA result had been submitted to a jury, [it] fail[ed] to see how it could have possibly caused a jury to give a different verdict." The trial court ultimately denied Ammons' pro se motion for new counsel as well as Ammons' counsel's motions for new trial and judgment of acquittal.

When the trial court moved on to sentencing, Ammons objected to several of his prior convictions, arguing the State failed to prove those entries on his presentence investigation report. The trial court continued the hearing to allow the State to verify his prior convictions.

Before the next sentencing hearing, Ammons filed a pro se motion to reconsider the dismissal of counsel, which the trial court orally denied at the final sentencing hearing by adopting its prior rulings. The trial court found Ammons' criminal history score to be A based on three prior person felonies and sentenced him to concurrent prison terms of 221 months on the kidnapping charge, 55 months on the aggravated robbery charge, and 7 months on the criminal possession of a weapon by convicted felon charge.

7

Ammons timely appeals.

## I.  DID THE TRIAL COURT ERR WHEN RESPONDING TO A JURY QUESTION?

For the first time on appeal, Ammons asserts that the trial court erroneously responded to the jury's questions. Ammons contends that this court should reverse his conviction for kidnapping because the trial court's response to a jury question was legally incorrect and did not provide a meaningful response. The State's response is twofold. First, the State argues that Ammons invited any error in the trial court's response by affirmatively agreeing to the response given, thereby precluding review by this court. Second, the State argues the response given by the trial court was not erroneous or an abuse of discretion. We will address the invited error question first.

### A.  *Ammons invited the error.*

Under K.S.A. 2018 Supp. 22-3420(d), after receiving a question from the jury during deliberations, the trial court shall notify the parties of the contents of the question and provide an opportunity to discuss an appropriate response while the defendant is present. Any written jury question, the court's response, and objections shall be made part of the record. The record reveals the trial court complied. There was no transcript of the discussion about the jury's question included in the record on appeal. But once the trial court was back on the record and Ammons was present, the trial court explained its position and asked if defense counsel agreed that the explanation was the substance of their conversation, to which she responded affirmatively. Then the trial court asked if counsel agreed that was what the court should send to the jury, and defense counsel again responded affirmatively. The trial court's typewritten response contained Ammons' defense counsel's signature.

8

The State contends Ammons did more than merely acquiesce. His counsel responded affirmatively when asked if "that's what should be sent to the jury."

"Whether the doctrine of invited error applies presents a question of law" over which this court exercises unlimited review. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016). A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014).

Kansas appellate courts have consistently declined to address challenges similar to Ammons' based on the invited error doctrine. See *State v. Bruce*, 255 Kan. 388, 397, 874 P.2d 1165 (1994) (refusing to consider merits of challenge to jury question response when defense counsel agreed on record to ultimate response given by trial court); *State v. Cramer*, 17 Kan. App. 2d 623, 632-33, 841 P.2d 1111 (1992) (same), *rev. denied* 252 Kan. 1093 (1993).

In *State v. Adams*, 292 Kan. 151, 254 P.3d 515 (2011), the Kansas Supreme Court applied the invited error doctrine on similar facts. In that case, the court noted that even though the record did not conclusively show Adams' presence during the discussion about a jury question, Adams invited any error in the trial court's response because defense counsel had agreed in open court and signed the typewritten response. 292 Kan. at 164-65. In contrast, our Supreme Court found the invited error doctrine did not apply where the record showed that defense counsel only "suggested" a possible response without expressing "unequivocal approval." *State v. Lewis*, 299 Kan. 828, 855, 326 P.3d 387 (2014).

Here, the record shows that Ammons' defense counsel gave "unequivocal approval" on the record, in Ammons' presence, to the response given by the judge and signed the typewritten response. Accordingly, we find the invited error doctrine prevents us from considering any erroneous response to the jury question.

9

However, to avoid this result, Ammons argues in his reply brief that the trial court's response amounts to structural error that overrides the application of invited error, warranting full review of this issue on the merits. Structural errors, he claims, are so intrinsically harmful that automatic reversal is required. According to Ammons, if the trial court's response was erroneous, then we must *presume* that the error brought about a "'necessarily unquantifiable and indeterminate'" consequence on the jury's verdict. See *State v. Calderon*, 270 Kan. 241, 253, 13 P.3d 871 (2000).

Ammons correctly notes that the invited error doctrine does not apply when a constitutional error is structural. See *State v. Logsdon*, 304 Kan. 3, 31, 371 P.3d 836 (2016). But the list of structural errors recognized by our courts is limited. Typically, the errors involve constitutional rights that are so central to the trial framework that the denial of these rights would "'infect the entire trial process'" and thus "'defy analysis by "harmless-error" standards.'" See *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302, *reh. denied* 500 U.S. 938 (1991). Not all constitutional errors are considered structural, and the United States Supreme Court has outlined several instructional errors that it has held to be nonstructural, including "instructing a jury as to an invalid alternative theory of guilt, omitting mention of an element of an offense, or erroneously instructing the jury on an element." *United States v. Marcus*, 560 U.S. 258, 264, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010). If erroneously instructing the jury on an element is not structural error, then the trial court's response to refer to the jury instructions cannot be structural error. For these reasons, we find the invited error doctrine applies and the error claimed is not a structural error. Ammons has failed to properly preserve this issue.

10

B.	*The response given by the trial court was not erroneous.*

Even if Ammons had not invited the error, we find the response to the jury's question was not erroneous or an abuse of discretion. Ammons argues that the trial court should have provided a response in accordance with *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), and that failure to do so resulted in an erroneous response. The State argues that providing the *Buggs* language to the jury in response to its question would not have been proper even if Ammons had requested it at trial.

When a defendant claims error in the trial court's response to a jury question, we first conduct de novo review to determine whether the trial court provided an erroneous response to the jury's question then review the sufficiency of the response for an abuse of discretion. The response "constitutes an abuse of discretion when no reasonable person would have given the response, the response includes an error of law, or the response includes a factual error." *State v. Walker*, 308 Kan. 409, 423, 421 P.3d 700 (2018).

Here, the jury instruction given for kidnapping closely followed the Pattern Instructions for Kansas (PIK). See PIK Crim. 4th 54.210 (2018 Supp.). The Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018).

In *Buggs*, 219 Kan. at 216, our Supreme Court held that to be kidnapping, the taking or confining to facilitate a crime (1) must not be merely incidental to the other crime; (2) must not be inherent in the nature of the underlying crime; and (3) must have made the underlying crime substantially easier to commit or substantially lessened the defendant's risk of detection. However, our Supreme Court previously found a trial court does not err by failing to include additional language from *Buggs* along with the pattern

11

instruction for kidnapping. *State v. McKessor*, 246 Kan. 1, 11, 785 P.2d 1332 (1990); *State v. Nelson*, 223 Kan. 572, 573, 575 P.2d 547 (1978).

Ammons argues that while giving only the PIK appropriate instructions may not be error, the trial court erred by responding to the jury's question to give "took" and "confined" their ordinary meanings because those terms take on additional significance in the context of prosecution for a kidnapping charge and, therefore, it was erroneous not to respond with the *Buggs* analysis. However, if a trial court can properly omit the language in *Buggs* from the jury instructions even when requested by a party, see *McKessor*, 246 Kan. at 11, then we find no error when that language is omitted from a response to a question from the jury seeking clarification of an instruction.

The PIK committee does mention *Buggs* in the comments to the recommended kidnapping pattern instruction but omits any definitions of "taking" or "confinement." See PIK Crim. 4th 54.210. Given that the PIK committee continues to recommend this instruction without defining those terms—and the Legislature has never incorporated the *Buggs* language into the statute—it cannot be said no reasonable person would have given the same response as the trial court.

When we find no error in the response given to a jury question, it follows that the trial court did not abuse its discretion for giving it. The trial court's response was not unreasonable and was not an error of law amounting to an abuse of discretion. We find no reversible error on this issue.

II.    WAS THERE SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR KIDNAPPING?

Ammons contends that the State presented insufficient evidence to show that a "taking" or "confinement" occurred that was independent of the aggravated robbery to support that element of the kidnapping charge.

12

A defendant need not challenge the sufficiency of evidence before the district court to preserve the issue for appeal, so Ammons' challenge is properly before us. See *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008). When a criminal defendant challenges the sufficiency of the evidence supporting a conviction,

> "'the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, [we are] convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [We] do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

To the extent that resolving a sufficiency-of-the-evidence challenge turns on issues of statutory interpretation, we exercise unlimited review because statutory interpretation is a question of law. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Ammons challenges his conviction for kidnapping under K.S.A. 2016 Supp. 21-5408(a)(2), which provides: "Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . to facilitate flight or the commission of any crime." The jury specifically found Ammons guilty of kidnapping based on the alternative means of a "taking," so the "confinement" element and its interpretation are not at issue in this appeal.

We again refer to our Supreme Court's holding in *Buggs*, 219 Kan. at 216:

> "[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
> > (*a*) Must not be slight, inconsequential and merely incidental to the other crime;
> >
> > (*b*) Must not be of the kind inherent in the nature of the other crime; and

13

(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

"For example: *A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is*. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. *The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is.* The list is not meant to be exhaustive, and may be subject to some qualification when actual cases arise; it nevertheless is illustrative of our holding." (Emphases added.)

The *Buggs* court held that "a taking and confinement to 'facilitate' the commission of [a] robbery" had occurred when the defendant accosted an employee in a Dairy Queen parking lot then forced her inside the restaurant at gunpoint, where he robbed her and raped her. 219 Kan. at 216-17. Further, the fact that a taking occurred—not the "particular distance of removal"—supplied the necessary movement to support a kidnapping conviction. 219 Kan. at 214. That said, it was unnecessary for Buggs to move the victim to complete the robbery because the victim had the money with her in the parking lot. But because the movement and confinement also served to substantially reduce the risk of detection of both the robbery and the rape, a kidnapping occurred. 219 Kan. at 216-17.

Relying on *Buggs*, Ammons claims there is insufficient evidence to find that the taking was more than incidental to the underlying offense. Because moving Valenzuela from just outside the back door of the store to the cash register inside the store was incidental—and inherent—to the commission of the aggravated robbery, Ammons reasons his kidnapping conviction should be reversed because the evidence showed the "taking" was not independent of the aggravated robbery.

14

The State agrees that the test set out in *Buggs* applies but argues that overwhelming evidence supports Ammons' kidnapping conviction. The State asserts that Ammons was only able to successfully complete the robbery by forcing Valenzuela into the store after being told he had no food or money outside the restaurant. We agree.

Cases in the wake of *Buggs* provide some guidance about whether a taking or confinement in the course of an aggravated robbery rises to the level of a kidnapping. For example, moving a robbery victim from room to room, thereby "enlisting the assistance" of the victim "in finding and retrieving money" is a kidnapping. *State v. Richmond*, 258 Kan. 449, 453, 904 P.2d 974 (1995); see also *State v. Shobe*, No. 87,307, slip op. at 10, unpublished opinion filed February 21, 2003 (applying *Buggs* and finding movement and confinement of victims to kitchen facilitated in commission of robbery).

Ammons also cites for support *State v. Kemp*, 30 Kan. App. 2d 657, 46 P.3d 31, *rev. denied* 274 Kan. 1116 (2002), in which multiple defendants committed a home invasion and armed robbery. During the robbery, a defendant moved a victim from the living room to a hallway and then to a bedroom where others were confined, while another defendant robbed other victims at gunpoint. The *Kemp* panel held there was insufficient evidence to support a kidnapping conviction, finding in part that "[t]he movement had no significance independent of the robbery." 30 Kan. App. 2d at 661.

Here, it would be difficult to say the movement had no significance independent of the robbery, and a review of the evidence in the light most favorable to the State reveals that the taking was more than incidental to the aggravated robbery. Ammons first approached Valenzuela while he was taking the trash out after closing the restaurant and asked for food. At this point, no crime had yet occurred. Valenzuela told him the restaurant was already closed and he had no food to give him. Ammons then showed the revolver and asked for the money, thus beginning his criminal actions. At this point only an attempted aggravated robbery of Valenzuela would have taken place because

15

Valenzuela told Ammons he did not have any money on his person outside. The "movement" occurred when Ammons ordered Valenzuela into the restaurant, forced Valenzuela to lead him to the cash register, and commanded Valenzuela to collect its contents into a sandwich bag. Once Ammons took the money-filled bag from Valenzuela, an aggravated robbery of the Subway had occurred. The questions then become: Was this movement sufficient evidence for a jury to find it was not inherent in the nature of the defendant's underlying crime? Did this movement make the defendant's underlying crime substantially easier in commission or substantially lessen the defendant's risk of detection? See *Buggs*, 219 Kan. at 216.

Ammons argues this situation is akin to the example articulated in *Buggs*: "The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping: locking him in a cooler to facilitate escape is." 219 Kan. at 216. We find the events here to be more akin to *Richmond* because Ammons forced Valenzuela to enter the restaurant, led him to the cash register, then directed Valenzuela to put the money into a bag. A rational fact-finder could conclude that Ammons was "enlisting the assistance" of the victim "in finding and retrieving money." See *Richmond*, 258 Kan. at 453. Valenzuela's forced movement had a "significance independent of the other crime in that it makes the other crime substantially easier of commission." See *Buggs*, 219 Kan. at 216.

It is noted, unlike in other cases, the movement here did not serve the purpose of reducing detection. The only evidence to suggest efforts to reduce detection is that after being denied food and money outside—in a place of public view—Ammons forced Valenzuela into the closed Subway—less subject to public view. Only one of the two *Buggs* elements is required: "that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. at 216.

After viewing the evidence in the light most favorable to the State, there was sufficient evidence presented that a rational fact-finder—the jury—could conclude as it

16

was instructed on the law by the trial court that Ammons was guilty of a kidnapping. As a result, we affirm his conviction for kidnapping.

III.    DID THE TRIAL COURT ERR BY DENYING AMMONS' MOTION FOR A NEW ATTORNEY?

Ammons contends the trial court erred by denying his pro se motion for a new attorney. He argues the trial court abused its discretion by failing to construe this posttrial motion as one requesting a new trial and to appoint conflict-free counsel and by failing to investigate fully whether trial counsel was ineffective. The State responds that the trial court properly denied Ammons' motion after conducting a full and appropriate inquiry into trial counsel's effectiveness.

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to conflict-free counsel at every critical stage of the proceedings, including at a hearing on a timely motion for new trial. See K.S.A. 22-4503(a); *State v. Sharkey*, 299 Kan. 87, 96, 322 P.3d 325 (2014). However, a defendant is only entitled to new counsel if he or she can demonstrate "'justifiable dissatisfaction'" by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication. *State v. Pfannenstiel*, 302 Kan. 747, 759-60, 357 P.3d 877 (2015). When the trial court learns about a possible conflict of interest between a defendant and his or her counsel, "'the court has a duty to inquire further. . . . [A] district court abuses its discretion when it makes no inquiry into the nature of the conflict. [Citations omitted.]'" *Sharkey*, 299 Kan. at 96-97.

"Pro se pleadings are liberally construed, giving effect to the pleading's content rather than the labels and forms used to articulate the defendant's arguments. . . . Whether the district court correctly construed a pro se pleading is a question of law subject to

unlimited review." *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010). A defendant must file a motion for new trial—other than on grounds of newly discovered evidence—within 14 days of the verdict. K.S.A. 2018 Supp. 22-3501(1). The trial court may extend the 14-day deadline, but otherwise the deadline is mandatory. See *State v. Holt*, 298 Kan. 469, 479, 313 P.3d 826 (2013).

Ammons claims that the trial court abused its discretion by failing to liberally construe his March 15, 2018 pro se motion for new counsel as a timely motion for a new trial based on ineffective assistance of counsel. He also contends that because the record indicates he attempted to file a motion for new trial within the 14-day time limit, he was entitled to the assistance of conflict-free counsel on that motion.

According to the record on appeal, Ammons' counsel filed a motion for new trial and a motion for judgment of acquittal on February 16, 2018—the day after trial. Ammons then filed a pro se motion for new counsel on March 15, 2018. Even though Ammons claims he filed a pro se motion for new trial on the same day, no such motion appears in the record. At a hearing, the trial court denied both motions filed by Ammons' counsel, denied Ammons' pro se motion for new counsel, and—even though no such motion appeared in the record—issued an order denying a pro se motion for new trial filed on March 15, 2018.

Counsel's motion for new trial was filed the day after the jury's verdict and thus was well within the 14-day timeline. This timely filed motion for new trial did not include an ineffective assistance of counsel claim. If it had, Mitchell would have been arguing her own ineffectiveness; thus her interests would have certainly conflicted with Ammons' interests, and the district court should have appointed new counsel in that instance. See *Sharkey*, 299 Kan. at 98.

18

Ammons filed his pro se motion for new counsel on March 15, 2018, more than 14 days after his February 15, 2018 conviction. Regardless of its contents, Ammons clearly filed the motion outside the 14-day mandatory filing deadline, so the motion would have been untimely even if construed as Ammons now requests. See *Holt*, 298 Kan. at 479. As a result, the trial court did not err by failing to construe Ammons' pro se motion for new counsel as a *timely* motion for new trial.

However, as the *Sharkey* court explained:

"[A]n untimely motion is considered under K.S.A. 22-4506, which applies to collateral attacks on a conviction. In such a case, a trial judge 'may determine that the motion, files, and records of the case conclusively show that the movant is entitled to no relief, in which case [the judge may] summarily deny the motion without appointing counsel.' The determination of whether the motion presents substantial questions of law justifying the appointment of counsel '"rests within the sound discretion of the trial court."' [Citations omitted.]" 299 Kan. at 95.

The trial court's duty to appoint new counsel would attach only if the motion raised substantial questions of law or triable issues of fact, which we review for an abuse of discretion. See *State v. Schumacher*, 298 Kan. 1059, 1069, 322 P.3d 1016 (2014).

In his motion, Ammons generally alleged ineffective assistance and referred to a previously filed "Complaint" that contained conclusory allegations against Mitchell. At the hearing, Ammons articulated only two complaints: (1) His counsel intentionally misled him by misrepresenting a DNA lab report and (2) his counsel was unable to work with him on his defense because she was too busy. Mitchell admitted to a mix-up involving the DNA lab report but did not otherwise argue for any position adverse to Ammons' interests. The trial court allowed Ammons to explain his dissatisfaction with Mitchell's representation, and the trial court considered whether a mistaken DNA lab

report had any effect on the jury's verdict, thus fulfilling its duty to inquire into the alleged conflict. See *Sharkey*, 299 Kan. at 96.

Ammons failed to demonstrate the existence of a conflict of interest amounting to justifiable dissatisfaction. Thus, the trial court did not abuse its discretion in denying his motion for new counsel.

IV.    DID THE TRIAL COURT VIOLATE AMMONS' SIXTH AND FOURTEENTH AMENDMENT RIGHTS BY ALLOWING JUDICIAL FACT-FINDING OF HIS PRIOR CONVICTIONS?

Ammons contends that the State failed to submit his prior convictions to a jury or prove them beyond a reasonable doubt, violating his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 477, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). He acknowledges the Kansas Supreme Court's decision rejecting this very claim in *State v. Ivory*, 273 Kan. 44, 44-45, 41 P.3d 781 (2002), but seeks to preserve the issue for federal review. As the State correctly notes, we are duty bound to follow Kansas Supreme Court precedent, absent any indication that it is departing from its previous position. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). We therefore reject Ammons' contentions that the State must submit his prior convictions to a jury and prove them beyond reasonable doubt.

In summary, we find no error by the trial court and affirm Ammons' convictions for kidnapping, aggravated robbery, and criminal possession of a weapon by a convicted felon.

Affirmed.