NOT DESIGNATED FOR PUBLICATION

No. 119,779

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN GENE CUNEFARE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed October 18, 2019. Reversed and remanded with directions.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Natasha Esau*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: Brian Gene Cunefare pled guilty to driving under the influence (DUI). Prior to sentencing, he filed a motion to withdraw his plea, but the district court summarily denied this motion. Cunefare's appointed counsel also requested to withdraw as counsel due to a material breakdown of the attorney-client relationship. The district court denied this motion and sentenced Cunefare. Cunefare appeals the denial of both motions.

FACTS

On March 20, 2018, Cunefare pled guilty to DUI, fourth or subsequent conviction, pursuant to K.S.A. 2017 Supp. 8-1567(a)(2), (b)(1)(E). The district court originally scheduled sentencing for April 27, 2018, but rescheduled to May 4, 2018, due to a possible objection to Cunefare's criminal history score. When the parties appeared for sentencing on May 4, 2018, Cunefare's appointed attorney, Justin Bravi, orally requested to withdraw as counsel on the basis that a conflict had arisen between them. Bravi explained that although the continuance was due to a criminal history objection, there had since been a material breakdown in the attorney-client relationship after having additional discussions with Cunefare. The court refused to change counsel this late into the proceedings stating that a simple disagreement does not require appointment of new counsel. Cunefare then requested a continuance for the purposes of retaining private counsel arguing that he needed until May 11, 2018, to pick up his paycheck in order to pay the retainer fee. The court agreed to continue the sentencing for one more week and set the hearing date for May 11, 2018, at 8:30 a.m.

Prior to the next hearing, on May 9, 2018, Bravi filed a motion to withdraw the plea on behalf of Cunefare citing a failure to communicate with his attorney regarding his understanding of the terms of the plea agreement. At the May 11 hearing, the parties met again for sentencing. During opening statements, Bravi immediately explained that he and Cunefare's interests were adverse and he again requested to withdraw as counsel, especially in light of the motion to withdraw the plea. Because Cunefare was entitled to conflict-free counsel, Bravi did not feel comfortable moving forward as his attorney.

The district court denied the request to withdraw counsel because Cunefare had failed to hire new counsel since the May 4 hearing. The court also denied the motion to withdraw the plea noting a lack of good cause because Cunefare had signed an

acknowledgement of rights form when he entered his plea. The parties went on to argue for their respective sentence requests.

Just before pronouncing the sentence, the district court asked Cunefare if he wished to make any statements. Cunefare again requested a continuance to hire new counsel arguing that he planned to pay the retainer fee that afternoon. Cunefare stated he did not feel that Bravi had "done a good job as far as getting enough, I guess, evidence. I don't know how to explain it on my belief of what I've been doing." The court ultimately sentenced Cunefare to 12 months in jail, stating,

> "Mr. Cunefare, Mr. Bravi has done an excellent job of working on your behalf. I don't know what he could have said to change my mind about the sentence you need to serve. This is your thirteenth alcohol-related offense. As I count I see eight prior DUIs. Breath alcohol level of [.242] and I am not willing to authorize work release. I am not willing to give you access to a vehicle because you just don't seem to learn that you can't drink and drive."

Cunefare appeals the denial of both of his motions.

## ANALYSIS

*Motion to Withdraw as Counsel*

Cunefare argues the district court abused its discretion in denying Bravi's request to withdraw as counsel as the Sixth Amendment to the United States Constitution affords him the right to conflict-free counsel. He argues he showed justifiable dissatisfaction with Bravi because there was a complete breakdown in communications between the two. Cunefare argues the district court has a duty to inquire into asserted conflicts, but failed to do so. In addition, Cunefare asserts the court erred in denying his request for a continuance because he had a private attorney that he was about to retain.

3

Conversely, the State contends the district court properly inquired into the conflict by allowing Cunefare to make a statement at sentencing. The State argues that when Cunefare had the opportunity to discuss the conflict, he focused his comments on his desire to hire new counsel instead.

When the district court is notified of a potential conflict of interest faced by a criminal defense attorney, the court is required to make an appropriate in-depth inquiry into the conflict. If an appropriate inquiry is made, the district court's decision to deny a motion to withdraw counsel is reviewed under the abuse of discretion standard. *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013). A failure to make an adequate inquiry when the court is aware of the potential conflict constitutes an abuse of discretion. *State v. Marshall*, 303 Kan. 438, 447, 362 P.3d 587 (2015); see also *State v. Sharkey*, 299 Kan. 87, 100-01, 322 P.3d 325 (2014) (when a defendant files a timely pro se posttrial motion claiming ineffective assistance of trial counsel, trial counsel then has a conflict of interest and defendant is entitled to have new counsel argue a motion for new trial).

Generally, to be entitled to appointment of new counsel, a defendant must show justifiable dissatisfaction with appointed counsel. A defendant establishes justifiable dissatisfaction by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. *State v. Golston*, No. 118,471, 2019 WL 1303080, at *7 (Kan. App. 2019) (unpublished opinion). Past courts have held that a lack of cooperation or communication between a defendant and counsel does not in and of itself violate the Sixth Amendment right to counsel. 2019 WL 1303080, at *7. But, when a defendant moves to dismiss his or her attorney, the motion triggers the district court's duty to inquire into the potential conflict unless the district court "has a reasonable basis to conclude that counsel could provide effective and fair representation, then the denial of a motion for new counsel cannot be an abuse of discretion." 2019 WL 1303080, at *7.

4

In a recent Kansas Supreme Court opinion, the court decided that even one single, open-ended question into a potential conflict could satisfy a district court's duty to inquire.

> "An articulated statement of attorney dissatisfaction triggers the district court's duty to inquire. A district court conducts an appropriate inquiry into a defendant's dissatisfaction with counsel by investigating: '(1) the basis for the defendant's dissatisfaction with counsel and (2) the facts necessary for determining if that dissatisfaction warrants appointing new counsel, that is, if the dissatisfaction is 'justifiable.' But this inquiry does not require 'a detailed examination of every nuance of a defendant's claim of inadequacy of defense and conflict of interest.' Instead, 'A single, open-ended question by the trial court may suffice if it provides the defendant with the opportunity to explain a conflict of interest, an irreconcilable disagreement, or an inability to communicate with counsel.' [Citations omitted.]" *State v. Toothman*, No. 114,944, 2019 WL 4231214, at *7 (Kan. 2019).

Other courts have held that "simply allowing a defendant to make a statement regarding his or her complaints is an insufficient inquiry." *Sharkey*, 299 Kan. at 99. Where the district court does not fully address a defendant's complaints in making findings and denying the defendant's motions, the appellant court cannot be assured the district court fully understood the defendant's position. 299 Kan. at 99.

Bravi raised the issue of a potential conflict on three separate occasions. On the first occasion, Bravi requested to withdraw stating there had been a material breakdown in communication:

> "MR. BRAVI: I'm going to request to withdraw in this case. There's been a conflict that's arisen between myself and Mr. Cunefare at this time where it wouldn't be prudent for me to proceed at this time. So we're making that request at this point to withdraw.
> "THE COURT: Um, sentencing was continued over from last week. You indicated there might be an objection to criminal history.

5

"MR. BRAVI: That's correct, Judge. And since that time Mr. Cunefare and I have had additional discussions and a conflict has arisen wherefrom my conversations with Mr. Cunefare, I believe there's been a material breakdown of the attorney/client relationship and thus new counsel will need to be appointed for him.

"THE COURT: Okay. . . . But, well, given the status of the case in that we're clear to the sentencing portion, I'm not going to change counsel. Mr. Cunefare, I—as when you're asking for an appointed attorney you don't have a right to choose attorneys and Mr. Bravi is a capable, experienced attorney. So just the fact that you have a disagreement with him, doesn't, doesn't mean I assign you someone else."

As evidenced by this colloquy, the district court did not ask any questions regarding the representation. Instead, the court stated it would proceed to sentencing. Just after this statement, Cunefare asked to speak and the court permitted him to do so. Cunefare did not mention any breakdown in communication with Bravi or any conflict of interest, only that he wished to secure private counsel and needed a continuance to retain him. Had it not been for Cunefare's request to retain new counsel, the court would not have granted a continuance or inquired into the conflict. The court would have sentenced him that day.

Before the next sentencing hearing, Bravi again raised the issue of potential conflict when he filed a motion to withdraw a plea on Cunefare's behalf citing a failure to communicate with Bravi regarding his understanding of the plea.

The third occasion on which Bravi raised the issue was at the May 11 sentencing hearing. At the beginning of the hearing, Bravi again requested to withdraw as counsel:

"MR. BRAVI: Judge, at this point Mr. Cunefare and I are—interests are adverse. I'm going to ask the Court again to let me withdraw especially in light of his motion to withdraw plea at this point. Mr. Cunefare is entitle[d] to conflict-free counsel and at this point I just don't feel comfortable moving forward as his attorney. So I'm going to, again, ask you [to] allow me to withdraw and Mr. Cunefare can hire counsel of his own accord

6

or inquire of Mr. Cunefare on that if the Court were to allow me to withdraw today. In the alternative appoint new counsel for him.

"THE COURT: Well, last Friday May 4, I agreed to continue the sentencing one week because Mr. Cunefare asked for time to hire an attorney. Obviously that hasn't happened and we'll proceed with sentencing today."

Again, the district court did not question why Bravi's and Cunefare's interests were adverse or why there may have been a conflict between the two. Instead, the court noted that Cunefare failed to obtain new counsel and the court wished to proceed to sentencing. It was not until after both counsel made their respective sentencing arguments that the court allowed Cunefare to make any statements. Cunefare reiterated his request to retain new counsel. The district judge responded that she believed Bravi had done an excellent job working on Cunefare's behalf and nothing he could have done would have changed her mind about the sentence he needed to serve.

Although the district court made a finding that Bravi had provided excellent counsel, it never inquired into whether a conflict may have existed. Because there was no inquiry, there was no reasonable basis to determine whether Bravi had provided fair and effective representation. *Toothman* demonstrates that a detailed inquiry into every nuance is not required, but at least one open-ended question is.

Here, when Bravi requested to withdraw, the district court abruptly moved to the sentencing portion of the proceedings. The court did not ask Cunefare at this time whether he wished to make any statements regarding the conflict. Both the State and Bravi then proceeded to give their respective arguments for the appropriate sentence. Only after the arguments were made did the district court ask Cunefare if he wished to make any statements. Given the timing of this question, it appears the court's question was prompting Cunefare to make an argument or statements about the sentence he should receive, not whether a conflict of interest existed. Regardless, under *Sharkey*, simply

7

allowing a defendant to make statements regarding the complaint is an insufficient inquiry. As a result, the court failed to inquire into any potential conflict.

Still, during these statements, Cunefare expressed that he did not feel Bravi adequately represented him and failed to provide him with enough evidence. Cunefare requested to hire new counsel. Without further inquiry, the court immediately sentenced Cunefare and stated that Bravi had done an excellent job of working on his behalf. However, the court did not make any factual findings with respect to whether Bravi had presented Cunefare with evidence or any other communication issues. Because the court did not fully address these complaints, we cannot be "assured the judge fully understood [the defendant's] position." *Sharkey*, 299 Kan. at 99.

Even if the district court's decision to allow Cunefare to make a statement could satisfy the inquiry requirement, the statement did not come until after Bravi had already represented Cunefare and argued for a sentencing disposition. As a result, Bravi represented Cunefare during a critical stage in the proceedings with potentially adverse interests.

Both Bravi and Cunefare sought to dissolve the representation, but the district court did not allow either to further explain their concerns. While lackluster advocacy is not generally enough to meet the justifiable dissatisfaction standard, the court did not allow either Bravi or Cunefare to assert their reasons for dissatisfaction. Instead, the court assumed the reason for the withdrawal was because Bravi and Cunefare had one disagreement. However, there are no facts in the record to suggest that one disagreement was the basis for the request to withdrawal. As a result, the court failed to inquire into the potential conflict and abused its discretion.

Past courts have held that the appropriate remedy for a failure to inquire is to remand for a hearing on the claim. *State v. Brown*, 300 Kan. 565, 578, 331 P.3d 797

8

(2014). Ordinarily, "'the appropriate remedy, in the absence of a suitable record on appeal concerning the alleged conflict of interest, is to remand to the trial court for a determination of whether the defendant can "establish that the conflict of interest adversely affected his counsel's performance."'" *State v. Prado*, 299 Kan. 1251, 1260, 329 P.3d 473 (2014). Here, the record does not contain sufficient facts to determine whether a conflict existed at the time of the plea or at sentencing and remand is appropriate.

Cunefare also argues he has a constitutional right to hire counsel and should have been granted a continuance to exercise his right under the Sixth Amendment and K.S.A. 22-4503(b) and (e). Those provisions state:

"(b) . . . The court shall give the defendant an opportunity to employ counsel of the defendant's own choosing if the defendant states the defendant is able to do so. If the defendant asks to consult with counsel of the defendant's own choosing, the defendant shall be given a reasonable opportunity to do so. . . .

"(e): If, after the attorney's appointment, the attorney learns that the defendant has funds or other resources sufficient to enable the defendant to employ counsel, the attorney shall report these facts to the court and ask permission to withdraw from the case or to be permitted to accept compensation for services."

Both parties assert the appropriate standard of review for this issue is abuse of discretion. However, where the Sixth Amendment right to counsel conflicts with a district court's discretionary power to deny a continuance to obtain new counsel, courts use the *Anthony* test:

"An element of the Sixth Amendment right to counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his or her own choosing. *State v. Anthony*, 257 Kan. 1003, 1018, 898 P.2d 1109 (1995) (citing *Powell v. Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 [1932]). But this right should not be 'manipulated to impede the efficient administration of justice.' When a criminal defendant's constitutional right to secure counsel of his choice conflicts with the trial judge's

9

discretionary power to deny a continuance, the reviewing court must balance several factors to determine whether the trial court's conduct was 'fair and reasonable.' Those factors include:

"'(1) whether a continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the fault of the defendant; and (5) whether the denial of a continuance would prejudice the defendant.' [Citations omitted.]" *Golston*, 2019 WL 1303080, at *9.

In *Golston*, the defendant asked the district court for a continuance just before sentencing for the purpose of obtaining private counsel. The court acknowledged one's right to hire new counsel, but denied the request stating: (1) Golston had not yet hired an attorney, (2) the court had already granted one continuance in the case, and (3) no basis existed to remove counsel. On appeal, Golston argued the court abused its discretion by denying him a continuance. Upon review, the *Golston* court affirmed the district court after applying the above factors.

The *Golston* court noted the district court had already granted a continuance in the case and another continuance would likely inconvenience the court, counsel, the victim, and otherwise disrupt the parties' schedules. The court noted that Golston had not presented a legitimate reason for having delayed his request to hire outside counsel and it was solely his fault. "[T]he record does not show that Golston made any previous effort or request to secure counsel of his own choosing." 2019 WL 1303080, at *10. Golston did not seek a continuance to hire a private attorney until six months into representation—long after trial preparation and plea negotiations.

In addition, Golston made no showing he was willing to substitute counsel as he did not provide the name of a private attorney that he wanted to hire or indicate that he contacted one—he only mentioned that he had the financial means to do so. As to the last factor, the denial of the continuance did not prejudice Golston because the plea had

10

already been voluntarily made which also benefitted him by dismissing additional charges. "Golston, fully aware of his decision and the consequences that would flow from it, has shown no prejudice by the district court's denial of his oral request for a continuance. We find no abuse of discretion by the district court." 2019 WL 1303080, at *10.

The *Anthony* factors apply to Cunefare's case as follows. Cunefare's motion to continue for the purpose of retaining new counsel was requested at the sentencing hearing. There were no witnesses that were scheduled to appear, only the defendant and counsel for each party. Cunefare requested to continue the hearing for one week and he was certain he could retain new counsel within that time. This request would not be a great inconvenience. As to the second and third factors, the district court had already granted a continuance for this reason one week before. However, as Cunefare explained, he could not retain his new counsel until he received his paycheck on May 11. The court scheduled the hearing for May 11 at 8:30, leaving Cunefare no opportunity to pick up his paycheck and retain his new counsel. Curiously, neither Bravi nor Cunefare objected to this timeslot, knowing Cunefare intended to pay for the new counsel's service later that day. Regardless, Cunefare told the court that he had met with the attorney earlier that week. Cunefare stated that all he needed to do was to pay the retainer fee before the new attorney could enter his appearance. Because Cunefare did not have a chance to actually retain the attorney, legitimate reasons existed for the delay.

As to the fourth factor, it appears Cunefare did not express a desire to retain private counsel until the second sentencing hearing, but indicated he had retained new counsel. This was Cunefare's fault. However, as evidenced by the record, the potential conflict between Bravi and Cunefare did not become apparent until the week between April 27, 2018, and May 4, 2018. At the May 4 hearing, Bravi opened the hearing by requesting to withdraw. Although Cunefare never made a request up until that point, the record reflects there may not have been a need to retain new counsel and the financial

11

means to do so were not yet available. Per the analysis above, the court never inquired into whether there was a potential conflict and the record does not provide the necessary information to make that determination.

The fifth factor analyzes whether the denial of the continuance would prejudice the defendant. Cunefare requested a new hearing, but he did not explain how obtaining new counsel would impact his sentencing. Nor does he provide a prejudicial impact in his appellate brief. In addition, Cunefare does not allege Bravi was deficient in representing him in the sentencing portion of the proceeding, only that he should have been afforded new counsel. The district court judge stated she did not see how anything Bravi said would have influenced her decision to sentence Cunefare to 12 months in jail. However, because Bravi potentially had interests adverse to Cunefare and did not feel comfortable proceeding to sentencing, his statements could have had a prejudicial effect. Bravi noted he did not feel comfortable moving forward, especially in light of the fact that he just filed a motion to withdraw his plea on the basis of a failure to communicate with Cunefare. Although *Golston* found no prejudice because the plea was voluntarily made, Cunefare presents an issue of whether the plea was validly entered into given Bravi's representation.

Cunefare's case is distinguishable from *Golston* as the delay would not have been an inconvenience, he had new counsel retained, and there was potential prejudice due to a conflict of interest. As a result, the district court erred in not granting a continuance to allow Cunefare to retain the attorney. Accordingly, the ruling denying the continuance is reversed and the matter is remanded with directions to allow Cunefare to retain an attorney and for further proceedings.

*Motion to Withdraw Plea*

Cunefare argues the district court erred in summarily denying his motion to withdraw his plea because he showed good cause given the breakdown in communication with Bravi. He claims the breakdown in communication led to an inability to understand the terms of the plea agreement before he entered the guilty plea. The State contends Cunefare's statement that Bravi did not do a good job as far as getting evidence was insufficient to establish good cause as he never mentioned any misunderstanding regarding the plea prior to sentencing.

Pursuant to K.S.A. 2018 Supp. 22-3210(d)(1), a defendant may withdraw a plea any time before sentencing for good cause and within the discretion of the court. But, when a motion to withdraw a plea is summarily denied without argument or additional evidence we exercise unlimited review. We must determine whether the motion, records, and files conclusively show that the defendant is entitled to no relief. *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013). Further, "a hearing is limited to those times when the defendant's motion raises a substantial issue of fact or law. Mere conclusory statements cannot raise a substantial issue when no factual basis is alleged or appears in the record." *Golston*, 2019 WL 13030804, at *4.

When reviewing a presentence motion to withdraw a plea for good cause, appellate courts refer to the following factors: whether (1) the defendant was represented by competent counsel; (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006).

Here, in light of the above conflict of interest allegation, the record does not conclusively show that Cunefare is not entitled to relief. Cunefare alleges his plea was not understandingly made because there was a failure to communicate with his attorney.

Past courts have discouraged the summary denial of motions to withdraw plea when an ineffectiveness claim involves conversations between the defendant and defense counsel. *Bellamy v. State*, 285 Kan. 346, 357, 172 P.3d 10 (2007); see also *State v. Cook*, No. 119,925, 2019 WL 4230105, at *4 (Kan. App. 2019) (unpublished opinion). While Cunefare's allegation is short, it necessarily implicates the propriety of his conversations with Bravi during plea negotiations. Although the record reflects there was not a complete breakdown of communication until after the plea had been entered, the record does not conclusively show that there were no communication issues prior to the plea. As the district court pointed out, the transcript of the plea hearing reflects Cunefare stated he was satisfied with his counsel. However, given that there was an uninvestigated conflict of interest allegation, the record does not conclusively foreclose relief for Cunefare because the communication issues could have also existed at the time of plea negotiations.

Even though Cunefare does not allege that he would not have entered the plea but for the breakdown in communication, it is unclear what effect his communications with Bravi had on his decision to enter the plea. The district court did not attempt to make an inquiry into the basis for the motion despite having the opportunity to do so. Without such a record, Cunefare's motion raises substantial issues of law and fact. As a result, the district court erred in not conducting an evidentiary hearing on the motion. The denial of the motion to withdraw plea is reversed and the matter is remanded with directions to conduct an evidentiary hearing.

Reversed and remanded with directions.